IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 16-09485 |
| George E. Ludkowski, | Chapter 7 |
| Debtor. | Hon. Timothy A. Barnes |

**DEBTOR GEORGE LUDKOWSKI'S RESPONSE TO THE
TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO CONVERT
TO CHAPTER 13 AND TO THE ISSUE RAISED *SUA SPONTE*
BY THE COURT CONCERNING CONVERSION AFTER DISCHARGE**

On May 11, 2017, Debtor George Ludkowski ("Debtor") filed a motion to convert his Chapter 7 bankruptcy to a Chapter 13 bankruptcy under section 706(a) of the Bankruptcy Code ("Motion").  On May 22, 2017, the Trustee filed Trustee's Objection to Debtor's Motion to Convert to Chapter 13 ("Trustee's Objection") arguing that Debtor's motion should be denied because Debtor will not be able to propose a confirmable plan and therefore filed the motion in bad faith.[1]  *See* Trustee's Objection pp. 4-10.

At the initial hearing on the objection, evidence was presented that Lillian Ludkowski, Debtor's estranged wife, is now prepared to contribute funds in order to assist Debtor to attempt to achieve a confirmable plan.  As a result, the Court scheduled an evidentiary hearing for June 7, 2017.  The June 7th hearing was subsequently converted to a status hearing.

---

[1]  The Trustee also objected to Debtor's motion on the basis that Debtor did not qualify as a debtor pursuant to 11 U.S.C. §109 because Debtor's debts were outside the monetary requirements of Section 109(e).  *See* Trustee's Objection pp. 3-4.  However, at the continued hearing on this matter on June 7, 2017, the Trustee's counsel acknowledged that the Trustee's argument was based on a misunderstanding by the Trustee of the monetary requirements of Section 109(e) and, as a result, the Trustee withdrew his objection to Debtor's Motion based on that argument.

At the June 7th hearing, this Court decided that prior to hearing evidence on the details of the funds Lillian Ludkowski would be prepared to contribute toward any proposed Chapter 13 plan and whether a confirmable plan could be achieved, Debtor should first file a response to the Trustee's objection and address two issues: First, Debtor should first address whether the authority cited by the Trustee bars Debtor's Motion.  Second, this Court *sua sponte* asked Debtor to address whether the Court can grant Debtor's Motion despite the fact that Debtor has already been granted a discharge in the Chapter 7 proceedings.  The Court referenced a decision by Judge Schmetterer that provided guidance on this issue but the Court did not identify the decision by a specific citation.  As discussed herein, Debtor believes that the decision to which this Court was referring is *In re Starling*, 359 B.R. 901 (Jan. 11, 2007) (Schmetterer, J.) which, for convenience sake, is attached to this response.  Each of the above issues is addressed below.

**A.    The Cases Cited By The Trustee Do Not Preclude Debtor From Converting His Chapter 7 Case To A Chapter 13 Case**.

Under Section 706(a), Debtor has a right to convert his Chapter 7 case to Chapter 13.

That section unambiguously states:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

*See* 11 U.S.C. §706(a).  The Trustee relies on four cases rejecting a Debtor's motion to convert. Those cases have no applicability here.  All of those cases involve decisions that have barred a debtor from converting a bankruptcy case because the debtor purposefully misrepresented his or her assets in his or her initial bankruptcy petition, the debtor actively hid or concealed assets and the debtor attempted to avoid paying creditors.

For example, in Trustee's principal case, *Marrama v. Bank of Mass., et al.,* 549 U.S. 365 (2007), the Supreme Court affirmed the denial of a debtor's motion to convert a Chapter 7 case to a Chapter 13 because the debtor concealed significant assets and lied in the verified schedules attached to his initial bankruptcy petition.  The debtor listed the value of a home he owned as zero when the home had substantial value and debtor denied transferring the home other than in the ordinary course of business when in fact he had conveyed the home to a trust for no consideration to hide the property from his creditors.  *Id.* at 368.  In addition, debtor failed to disclose an anticipated tax refund and failed to disclose his effort to obtain a homestead exemption on a rental property.  *Id.* 370.  The court held that it was proper to deny debtor's motion to convert because the debtor had committed "fraudulent acts" in the initial filing of his Chapter 7 petition.  The court did not expressly identify conduct that would warrant denying a motion to convert, but the court expressly limited any such restriction to "extraordinary cases." *Id.* at 374 n.11.  Significantly, the court went on to reaffirm the plain language of Section 706(a) that in the absence of fraud, "honest but unfortunately debtors" do have "an absolute right to convert their cases from Chapter 7 to Chapter 13…." *Id.* at 374.

Likewise, in *In re Mercado,* 376 B.R. 340 (Bankr. MD. Fla. 2007), a debtor's effort to convert a Chapter 7 cases to Chapter 13 was denied after a court found that the debtors acted in bad faith when they engaged in similar conduct to that described in the *Mirrama* decision.  *Id.* at 348.  In *In re Mercado,* the court found that the debtors converted substantial nonexempt funds into an exempt homestead pre-petition and then concealed the use of funds from the sale of property in order to protect their assets against creditors.  *Id.*  The court found that the debtors' conduct prior to converting their case to Chapter 13, "like the debtor in *Mirranma"* was "misleading and atypical." *Id.*

Similarly in *In re Piccoli,* 2007 U.S. Dist. LEXIS 72533 (E.D.Pa. Sept. 27, 2007), the court affirmed denial of a motion to convert because the debtor had not been "honest and forthright with the Bankruptcy Court and the Trustee."  The court found that the debtor had grossly undervalued her interest in her home in her bankruptcy petition.  *Id.* at *20.  Moreover, the debtor testified in court as to the low value of her home without disclosing at the time that she had an appraisal of the home showing a much greater value.  *Id.*  Moreover, the debtor also "engaged in a prepetition transfer of the [majority interest in her] residence" to a family member for no consideration.  *Id.* at 21-22.

*In re Irmen,* 2008 Bankr. LEXIS 329 (N.D.Ill. Feb.1, 2008), the court denied a motion to convert a Chapter 7 bankruptcy to a Chapter 11.  Once again, however, the basis for the court's denial of the motion was premised in substantial part on the debtor's misstatement of his assets and liabilities in his bankruptcy petition.  The court specifically stated:

> Debtor has been deemed to admit false schedules, lack business records that he should possess, and failed to plead defenses in the state court to avoid default judgments and delayed in seeking to open them. That is enough to show a Debtor who cannot be relied on and a Motion that has been filed by him in bad faith.

*Id.* at *10.

In sum, in <u>every case</u> cited by the Trustee where a court has denied a motion to convert, the debtor substantially misrepresented his or her assets in the initial bankruptcy petition, engaged in efforts to conceal his or her assets and otherwise taken some wrongful effort (either pre-petition or post-petition) to avoid paying his or her creditors.  The touchstone necessary for a court to bar a debtor from converting a Chapter 7 case to a Chapter 13 case is purposeful effort by the debtor to deceive.  Absent such extreme conduct, it is improper to deny a debtor's motion to convert.  As the *In re Murray,* 377 B.R. 464, 469-470 (Bankr. D. Del. 2007) case demonstrates, even where a debtor does not disclose substantial assets, if the debtor's actions are

the product of genuine error or mistake, then a court must still grant a motion to convert.  In that

case, the debtor failed to disclose a license plate he owned which was valued at more than

$100,000 but it was shown that the debtor did not try to conceal the value of the license plate but

instead was unaware of its value.  Similarly, in the *In re Starling,* 2007 Bankr. LEXIS 67 (N.D.

Ill. Jan. 11, 2007) decision, Judge Schmetterer came to a similar conclusion.  There, debtors who

filed a Chapter 7 case were allowed to convert their case to a Chapter 13 after a discharge was

entered even though they had undervalued their home at the time they filed their Chapter 7

petition because their error was an innocent one.  *Id.* at *39-40 ("Although the Trustee argues

that the Debtors may have purposefully understated the market value of their home by more than

$100,000, evidence on the record did not demonstrate such malicious intent.")

Here, there is no evidence that Debtor purposefully misrepresented his assets, took any

action to conceal his assets from the Trustee or his creditors or otherwise engaged in any

intentional conduct to avoid paying his creditors.  Accordingly, this case falls into that class of

"honest but unfortunate debtors" who have "an absolute right to convert their cases from Chapter

7 to Chapter 13…."  *See Marrama,* 549 U.S. at 374.  Therefore, this Court should overrule the

Trustee's objection and grant Debtor's motion to convert.

**B.      The Discharge Does Not Preclude Debtor From Converting His Case To A Chapter
13 Bankruptcy Because The Discharge Can Be Vacated.**

In *In re Starling,* 2007 Bankr. LEXIS 67 (N.D. Ill. Jan. 11, 2007) (Schmetterer, J.) the

court held that a debtor could convert their Chapter 7 case to Chapter 13 pursuant to Section

706(a) even after entry of an order of discharge provided that the order of discharge is vacated.

The *In re Starling* decision is similar to this case.  Like here, the debtors filed a Chapter 7

bankruptcy petition.  Like here, an order of discharge was entered.  *Id.* at *2.  <u>Like here, after the</u>

discharge was entered, the Trustee sought to sell the debtors' home.  As Judge Schmetterer

poignantly observed:

> The foregoing sequence of events is quite unusual in Chapter 7 cases because the
> Chapter 7 Trustees will usually proceed against the homestead real estate of
> debtors before the discharge issues. The usual response of Chapter 7 debtors who
> want to keep their home is to seek conversion to a Chapter 13 in an effort to save
> the home, or they sometimes obtain funds from family or lenders to buy out the
> trustee's interest in recovering equity for the creditors. Mr. Levy is among the
> most diligent of Chapter 7 panel trustees, and his delay in proceeding against the
> home until the discharge had entered was likely due his heavy work load.
> Whatever the reason, this circumstance has resulted in a situation where Debtors
> are now struggling to overcome several hurdles before they can save their home
> through a Chapter 13 Plan.

*Id.* at **3-4 (emphasis added).  Similar to what happened here, when the Trustee moved against

their home, the debtors moved to vacate their discharge and convert their Chapter 7 case to a

Chapter 13.  *Id.* at *4.  The Trustee opposed the debtors' motion, in part, because a discharge had

already been entered.

The court held that it had the authority to vacate the discharge on the debtors' motion

under Federal Rule of Civil Procedure 60(b) and Federal Rule of Bankruptcy Procedure 9024

and then grant the debtors' motion to convert.  *Id* at *36 (citing cases).  The court explained that

relief could be granted under FRCP 60(b)(2) based on newly discovered evidence because it was

after the discharge was entered that the Trustee obtained an appraisal that revealed the equity in

the home, and that the debtor was unaware of the equity prior to filing its petition.  *Id.* at **39-

40.  The court explained that relief could also be granted under Rule 60(b)(5) because it was not

equitable to prevent the debtor from trying to save his home because the trustee dragged his feet

and in pursuing the debtor's home until after the discharge order was entered:

> An alternative basis for allowing relief under Rule 60(b)(5) is because it is no
> longer equitable that the discharge should have further viability. A series of
> unusual circumstances have caught debtors in a trap through no fault of their own.
> They should have a chance to save their house.

Id. at *41.

Similarly here, Debtor filed his Chapter 7 case and a discharge was granted on June 28, 2016. <u>After the discharge was entered</u>, on August 2016, the Trustee filed a motion to employ Bruce de'Medici. *See* Notice of Motion to Employ Bruce de'Medici, Aug. 18, 2016, Docket Report. No. 16. The Trustee did not move against Debtor's home at that time but instead only sought to take an inspection of the home to determine what value it may have. *See* Notice of Motion for Turnover of Documents Related to Interest in 8321 N. Ozanam, Niles, IL, Sept. 10, 2016, Docket Report No. 19. Not until December 30, 2016 did the Trustee file a lawsuit to sell the home. After that time, Lillian Ludkowski came forward and offered to contribute funds to make a Chapter 13 plan feasible so that Debtor could save his home, circumstances that did not exist at the time of the filing of the bankruptcy petition or the entry of the discharge. Accordingly, given these circumstances and the timing of these events, this Court—like the court in *In re Starling*—should vacate the order of discharge pursuant to FRCP 60(b)(2), 60(b)(5) or 60(b)(6) to allow Debtor to convert his case to a Chapter 13 in an effort to save his home.

**C.    Conclusion.**

For the forgoing reasons, Debtor respectfully moves this Court to vacate his Chapter 7 discharge pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Bankruptcy Procedure 9024 and enter an order converting his Chapter 7 case to Chapter 13 pursuant to 11 U.S.C. §706(a). To the extent that this Court requires a separate written motion to vacate the order of discharge, Debtor seeks leave to amend Debtor George Ludkowski's Motion to Convert to Chapter 13 to seek relief in accordance with this response, namely, an order vacating the discharge order.

Respectfully submitted,

GEORGE LUDKOWSKI,

By: /s/  Kevin P. McJessy_____
           One of His Attorneys

Kevin P. McJessy
McJessy, Ching & Thompson, LLC
3759 N. Ravenswood, Suite 231
Chicago, Illinois 60613
(773) 880-1260
(773) 880-1265 (fax)
mcjessy@mcandt.com

## <u>CERTIFICATE OF SERVICE</u>

I, Kevin P. McJessy, an attorney, certify that I caused the foregoing **Debtor George Ludkowski's Response To The Trustee's Objection To Debtor's Motion To Convert To Chapter 13 And To The Issue Raised *Sua Sponte* By The Court Concerning Conversion After Discharge** to be served upon:

| | |
|---|---|
| U.S. Trustee | N. Neville Reid |
| Patrick S. Layng | Fox Swibel Levin & Carroll, LLP |
| Office of the United States Trustee | 200 W. Madison Street |
| Region 11 | Suite 3000 |
| 219 S. Dearborn St., Room 873 | Chicago, IL  60606 |
| Chicago, IL  60604 | nreid@fslc.com |
| USTPRegion 11.es.ecf@usdoj.gov | |
| | |
| Robert N. Honig | Bruce de'Medici |
| 116 S. York St., Ste. 215 | Kelley Kronenberg |
| Elmhurst, IL  60126 | 190 S. LaSalle St., Ste. 450 |
| robert@roberthonig.com | Chicago, IL  60603 |
| | bdemedici@gmail.com |

via the Court's ECF Filing System on this 30th day of June 2017 and upon

| | |
|---|---|
| Spokane Financial | Chase Card |
| c/o David E. Cohen | PO Box 15298 |
| Fisher Cohen Waldman Shapiro | Wilmington, DE  19850 |
| 1247 Waukegan Rd., Ste. 100 | |
| Glenview, IL  60025 | |
| | |
| Harris & Harris Ltd. | Kohls |
| 111 W. Jackson Blvd., Ste. 400 | PO Box 2983 |
| Chicago, IL  60604 | Milwaukee, WI  53201-2983 |
| | |
| PNC Bank | SYNCB/Empire |
| PO Box 3180 | PO Box 965036 |
| Pittsburgh, PA  15230 | Orlando, FL  32896-5036 |

via U.S. First Class Mail, postage prepaid, deposited in the United States Mail Depository located at 3759 N. Ravenswood, Chicago, Illinois, 60613 on this 30th day of June 2017.

/s/  Kevin P. McJessy
Kevin P. McJessy

 LexisNexis®

⚠ Caution
As of: June 30, 2017 8:18 PM Z

## *In re Starling*

United States Bankruptcy Court for the Northern District of Illinois, Eastern Division

January 11, 2007, Decided

No. 05 B 53919

**Reporter**
359 B.R. 901 *; 2007 Bankr. LEXIS 67 **

IN RE EDWARD STARLING and KAREN STARLING, Debtor.

## Core Terms

convert, vacate, discharged, conversion, discharge order, Trustee's, reconvert, appraisal, revoke, bankruptcy court, revocation, equitable power, good faith, courts, repay, real estate, liquidated, claimants, Cooper, cases, bankruptcy judge, absolute right, market value, circumstances, equitable, services, parties, reasons, terms, newly discovered evidence

## Case Summary

**Procedural Posture**
Chapter 7 debtors filed a combined motion to convert their Chapter 7 case to Chapter 13 pursuant to *11 U.S.C.S. § 706(a)* and vacate the discharge entered in the Chapter 7 case. Trustee opposed the motion, and in the alternative moved that debtors' case be reconverted to Chapter 7 should conversion from Chapter 7 to Chapter 13 be permitted.

**Overview**
Debtors owned a home. Based on an appraisal obtained from a real estate brokerage firm pre-bankruptcy, the value of the home was less than the combined amount of debtors' claimed homestead exemption and the amount due under a mortgage note. Therefore, initially there

appeared no possibility that the real estate could be used to satisfy unsecured claims of creditors. Trustee, after the discharge had entered, had debtors' home appraised for a value significantly greater than the pre-bankruptcy appraisal. In an effort to save their home from a sale by trustee, debtors filed the instant motion. The court held that debtors' discharge had to be set aside if they wished to subject the debts listed in their Chapter 7 case to terms of a Chapter 13 plan. The court held that it had the authority to vacate debtors' discharge on debtors' own motion and convert the case to Chapter 13 because the higher appraisal of debtors' home constituted newly discovered evidence within the meaning of *Fed. R. Civ. P. 60(b)(2)*, made applicable in bankruptcy by *Fed. R. Bankr. P. 9024*. The court held that cause was lacking to warrant debtors' case being reconverted to Chapter 7 on trustee's motion.

**Outcome**
The court granted debtors' motion and denied trustee's motion.

## LexisNexis® Headnotes

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Liquidations

***HN1***[⤓] **Conversion & Dismissal, Liquidations**
Debtors may convert a Chapter 7 case to a case under Chapter 11, 12, or 13 at any time, if the case has not been converted under *11 U.S.C.S. § 1112*, *§ 1208*, or *§ 1307*. *11 U.S.C.S. § 706(a)*. However, notwithstanding

359 B.R. 901, *901; 2007 Bankr. LEXIS 67, **67

any other provision of *11 U.S.C.S. § 706*, a case may not be converted to a case under another Chapter of title 11 unless the debtor may be a debtor under such Chapter. *11 U.S.C.S. § 706(d).*

Bankruptcy Law > Claims > Types of Claims > Definitions

Bankruptcy Law > Individuals With Regular Income > Eligibility > General Overview

*HN2*[⤓]    **Types of Claims, Definitions**
*11 U.S.C.S. § 109(e)* states, in part, that only an individual with regular income that owes, on the date of the petition, noncontingent, liquidated, unsecured debts may be a debtor under Chapter 13. The term "debt" is defined in the Code as a "liability on a claim." *11 U.S.C.S. § 101(12).* A "claim" is defined, in part, as a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *11 U.S.C.S. § 101(5).*

Bankruptcy Law > Claims > Types of Claims > Definitions

*HN3*[⤓]    **Types of Claims, Definitions**
A creditor is defined under the Bankruptcy Code to mean: (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in *11 U.S.C.S. § 348(d)*, *§ 502(f)*, *§ 502(g)*, *§ 502(h)* or *§ 502(i)*; or *(C)* entity that has a community claim. *11 U.S.C.S. § 101(10).*

Bankruptcy Law > ... > Bankruptcy > Conversion & Dismissal > Liquidations

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

*HN4*[⤓]    **Conversion & Dismissal, Liquidations**
A debtors' Chapter 7 discharge must be set aside if they wish to subject the debts listed in their Chapter 7 case to terms of a Chapter 13 plan.

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

*HN5*[⤓]    **Liquidations, Revocation of Discharge**
*11 U.S.C.S. § 727(d)* permits a court to revoke a Chapter 7 discharge on request of the trustee, a creditor, or the United States Trustee if certain specified wrongs or omissions are shown. *11 U.S.C.S. § 727(d).*

Bankruptcy Law > ... > Bankruptcy > Case Administration > Bankruptcy Court Powers

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

*HN6*[⤓]    **Case Administration, Bankruptcy Court Powers**
Authority under *11 U.S.C.S. § 105(a)* does not give authority for revocation of discharge on a debtor's motion. Authority granted under *§ 105(a) of the Bankruptcy Code* that permits courts to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Bankruptcy Code may only be exercised within the confines of the Bankruptcy Code. A bankruptcy court may not use its equitable powers to circumvent the law. Nor does a bankruptcy court have free-floating discretion, to create rights outside the Bankruptcy Code.

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

Civil Procedure > Judgments > Relief From Judgments > General Overview

*HN7*[⤓]    **Liquidations, Revocation of Discharge**
The standards for relief under *11 U.S.C.S. § 727(d)* and *Fed. R. Civ. P. 60(b)* are not identical. Moreover, *11 U.S.C.S. § 727(d)* gives a right to revocation to the trustee, creditor, or United States trustee whereas *Fed. R. Civ. P. 60(b)* only concerns a party seeking to undo an existing judgment. Therefore, a "party," such as a

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 12 of 24

Page 3 of 15

359 B.R. 901, *901; 2007 Bankr. LEXIS 67, **67

debtor in bankruptcy, may properly move to vacate a discharge order under *Fed. R. Civ. P. 60(b)* for one of the reasons recognized therein.

Governments > Legislation > Interpretation

*HN8*[⤓] **Legislation, Interpretation**
Where the statutory language is clear, a court's sole function is to enforce it according to its terms. Courts are to interpret statutes according to their plain meaning except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters. In such situations, the intention of the drafters, rather than the actual language used in the statute, controls the statute's interpretation. When warranted, courts apply the statutory construction cannon of expressio unius est exclusio alterius, which means that the expression or inclusion of one thing implies the exclusion of all others. Moreover, the maxim is only a guide and does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence.

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

*HN9*[⤓] **Liquidations, Revocation of Discharge**
Nothing about the language used in *11 U.S.C.S. § 727(d)* reveals any ambiguity or suggestion that Congress intended to either include or exclude debtors amongst individuals afforded standing under that provision. *Section 727(d)* states that the trustee, a creditor, or the United States trustee may request revocation of a discharge order. No inference, either direct or implied, can be made in the noonday that a "debtor" was to be included in or excluded from that grouping.

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

*HN10*[⤓] **Liquidations, Revocation of Discharge**
The statutory listing in *11 U.S.C.S. § 727(d)* does not under rules of construction bar debtors from seeking to vacate their discharge.

Bankruptcy Law > ... > Discharge & Dischargeability > Liquidations > Revocation of Discharge

Civil Procedure > Judgments > Relief From Judgments > General Overview

*HN11*[⤓] **Liquidations, Revocation of Discharge**
*Fed. R. Civ. P. 60(b)* (as adopted by *Fed. R. Bankr. P. 9024*) may permit courts to grant a debtor's request to vacate a discharge under certain circumstances.

Civil Procedure > Judgments > Relief From Judgments > General Overview

*HN12*[⤓] **Judgments, Relief From Judgments**
Under *Fed. R. Civ. P. 60(b)*, a party may seek relief from a final judgment, order, or proceeding based on: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under *Fed. R. Civ. P. 59(b)*; (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Civil Procedure > Judgments > Relief From Judgments > Newly Discovered Evidence

*HN13*[⤓] **Relief From Judgments, Newly Discovered Evidence**
*Fed. R. Civ. P. 60(b)(2)* is designed to allow modification of a prior ruling when evidence comes to light after a ruling that could not have been learned earlier. Relief based on "newly discovered evidence" is

359 B.R. 901, *901; 2007 Bankr. LEXIS 67, **67

extraordinary in nature and will only be granted in exceptional circumstances. A party needs awfully good stuff to win a _Fed. R. Civ. P. 60(b)(2)_ motion. A movant must prove that: (1) the evidence was discovered following trial; (2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that a new trial would probably produce a new result.

Bankruptcy Law > Conversion & Dismissal > Individuals With Regular Income

_HN14_[⬇️]  **Conversion & Dismissal, Individuals With Regular Income**
_11 U.S.C.S. § 1307(c)_ provides that a court may convert a case under Chapter 13 to a case under Chapter 7 for cause. _11 U.S.C.S. § 1307(c)_.

Bankruptcy Law > Conversion & Dismissal > Lack of Good Faith

_HN15_[⬇️]  **Conversion & Dismissal, Lack of Good Faith**
Several factors should be considered when deciding whether a Chapter 13 petition was filed in bad faith, including: (1) the nondischargeability of the debt; (2) the time of the filing of the petition; (3) how the debt arose; (4) the debtor's motive for filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors. Furthermore, in evaluating whether a petition was filed in good faith, the inquiry looks at both subjective and objective criteria. The good faith inquiry is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry.

**Counsel:** [**1] Attorney for Movant or Plaintiff: David T. Lin (Robert J. Semrad & Associates).

Trustee or Other Attorneys: Phillip D. Levey (Chapter 7 Trustee), Tom Vaughn (Chapter 13 Trustee).

**Judges:** Jack B. Schmetterer, United States Bankruptcy Judge.

**Opinion by:** Jack B. Schmetterer

# Opinion

[*904] MEMORANDUM OPINION ON DEBTORS' MOTIONS TO VACATE DISCHARGE AND CONVERT TO CHAPTER 13 AND ON TRUSTEE'S MOTION TO RECONVERT

Debtors' Edward and Karen Starling (the "Debtors") filed their combined motion to convert this Chapter 7 case to Chapter 13 and vacate the discharge entered in the Chapter 7 case. Chapter 7 Trustee Philip Levey (the "Trustee") opposed that motion, and in the alternative moved that Debtors' case be reconverted to Chapter 7 should conversion from Chapter 7 to Chapter 13 be permitted. The Trustee wants to sell their home which is found to have equity not reflected in an appraisal that Debtors obtained before filing their case.

By order entered December 7, 2006, over the Trustee, objection to the Debtors' motion to vacate their discharge order and convert to a Chapter 13 case was allowed, and the Trustee's Motion to Reconvert was denied. This Opinion sets forth the grounds for those rulings.

[**2] **FINDINGS OF FACT**

Apart from a dispute over value of the home which was resolved by evidence [*905] hearing, the relevant facts are not in dispute:

With the assistance of counsel, the Debtors filed a petition for Chapter 7 bankruptcy relief on October 14, 2005. Their Schedule D listed secured claims totaling $ 104,729.53. Total general unsecured claims were listed on Schedule F at $ 49,160.63.

Included among their assets, and listed accordingly on Schedule A, is real property used as the Debtors' homestead and commonly known as 8030 S. Woodlawn, Chicago, IL. Based on an appraisal obtained

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 14 of 24

Page 5 of 15

359 B.R. 901, *905; 2007 Bankr. LEXIS 67, **2

from a real estate brokerage firm pre-bankruptcy and dated October 11, 2005, the Debtors listed "$ 104,000" as the real estate's then current market value on Schedule A. The Debtors' schedules further reflect that the property was secured by a $ 93,000 mortgage note, thus apparently leaving the Debtors with $ 11,000 of equity in the property. As allowed under Illinois law applicable when the bankruptcy was filed, _735 ILCS 5/12-901_, the Debtors claimed their homestead exemptions then totaling $ 15,000. Therefore, initially there appeared no possibility that the [**3] real estate could be used to satisfy unsecured claims of creditors.

Chapter 7 Trustee Phillip Levey ("Trustee") was assigned to the Debtors' case by the United States Trustee for this region. The first meeting of creditors was scheduled to be held on February 1, 2006. Without objection to discharge or other litigation issues being raised by Trustee or other creditors and without any effort being made by the Trustee for several months to sell the home, Debtors were granted a discharge under _§ 727 of the Bankruptcy Code_ on April 10, 2006.

At some point prior to June 2006, but apparently after the discharge had entered, the Trustee had the Debtors' real property appraised for an approximate market value of $ 225,000 to $ 235,000. Pursuant to an application filed by the Trustee, an order was entered June 8, 2006 authorizing him to employ a real estate brokerage firm to market the property for sale. Notice of that motion was the first information received by Debtors of Trustee's contention that their home was worth much more than they had known or believed, since they had relied on the pre-bankruptcy appraisal.

The foregoing sequence of events is quite unusual [**4] in Chapter 7 cases because the Chapter 7 Trustees will usually proceed against the homestead real estate of debtors before the discharge issues. The usual response of Chapter 7 debtors who want to keep their home is to seek conversion to a Chapter 13 in an effort to save the home, or they sometimes obtain funds from family or lenders to buy out the trustee's interest in recovering equity for the creditors. Mr. Levy is among the most diligent of Chapter 7 panel trustees, and his delay in proceeding against the home until the discharge had entered was likely due his heavy work load. Whatever the reason, this circumstance has resulted in a situation where Debtors are now struggling to overcome several hurdles before they can save their home through a

Chapter 13 Plan.

They initially thrashed about in efforts to prevent sale of their home or even to permit it to be shown by the Trustee's broker. Pursuant to a motion filed by the Trustee, an order was entered June 22, 2006 requiring the Debtors to cooperate with the Trustee and his agents in marketing and selling the real estate. The order further even authorized the Trustee to change the locks on the premises in the event the Debtors failed [**5] to cooperate. The Debtors continued with some efforts to slow Trustee and the broker's efforts to sell the property. An additional order was [*906] entered October 10, 2006 compelling the Debtors' particularized cooperation.

On August 20, 2006, a motion to substitute the Debtors' original counsel with their present counsel was filed and allowed by order entered September 15, 2006. Under the guidance of new counsel, the Debtors tried to use the law to solve the problem. They moved on August 21, 2006, to convert their case from a Chapter 7 case to a Chapter 13 case and to have the Chapter 7 discharge vacated.

On October 5, 2006, an evidence hearing concerning the property's value was held. After considering evidence presented by the Parties, a ruling was issued from the bench that the subject real estate has a value of $ 200,000. (Trial Tr., 14, Oct. 27, 2006.) The Trustee obtained evidence that the unpaid balance of the mortgage held against the property was about $ 89,000 as of October 3, 2006. It thereby became apparent that Debtors' have significant net equity in their home, in the range of $ 84,000 ($ 200,000 less broker's fee of $ 12,000, mortgage of $ 89,000, and homestead exemptions [**6] of $ 15,000).

Following further hearing on the pending motions and remaining issues, a decision was announced from the bench on December 7, 2006, that for reasons to be set forth in this opinion, the Debtors' discharge would be vacated, their request to convert from Chapter 7 to Chapter 13 would be granted, and Trustee's motion to reconvert would be denied. However this relief was to be conditioned upon the Debtors compensating the Trustee for services he rendered in trying to market and sell the property. The Trustee was granted leave to submit a fee application based on his efforts to market and sell the property.

The Trustee filed an application for compensation and reimbursement for expenses, requesting $ 8,937.50 for 27.5 hours of services performed while acting in the capacity of legal counsel for himself as Trustee and reimbursement of $ 24.60 for actual expenses. Although the Debtors raised objections to the application, the Parties stated during a hearing held on November 30, 2006 that agreement had been reached whereby the Trustee's fee application would be granted in full and paid as a cost of administration following conversion. The agreement additionally provided that [**7] the Trustee shall not be entitled to receive any fees for additional services rendered as the Chapter 7 trustee unless the Debtors case is re-converted from a Chapter 13 to a Chapter 7. If the case is reconverted, the Trustee will be entitled to seek and receive whatever fees and costs are prescribed under *§ 330 of the Bankruptcy Code*. An agreed order reflecting this agreement was entered on December 8, 2006.

Any further facts set forth below in the Conclusions of Law are to be regarded as additional Findings of Fact.

## CONCLUSIONS OF LAW

1

## JURISDICTION

Subject matter jurisdiction lies under *28 U.S.C. § 1334*. This matter is before the bench pursuant to *28 U.S.C. § 157(b)(2)(A)* [**8] and *(O)* and District Court Internal Operating Procedure 15(a). Venue is proper under *28 U.S.C. § 1409(a)*.

## Issues

In support of their request to convert their case from a Chapter 7 to a Chapter [*907] 13, the Debtors rely on *§ 706(a) of the Bankruptcy Code*. While the Debtors argued that revocation of their discharge is not necessary to facilitate the conversion, they additionally moved to have the discharge vacated.

The Trustee raised several points in response. First, he argues that a Chapter 7 case cannot be converted to a Chapter 13 case once a discharge has been entered. The Trustee reasons that absent a debtor's liability on the discharged claims, there is nothing to repay under a Chapter 13 plan. On the question of whether the Debtors can move to vacate the discharge, the Trustee argues that the Debtors lack standing under *§ 727(d)* of the Code to move for such relief. The Trustee additionally contends that a bankruptcy court cannot rely on whatever equitable powers it may possess to override the specific designations of *§ 727(d)* as to who may move to revoke a discharge, and therefore cannot grant the Debtors' request to vacate [**9] the Chapter 7 discharge. However if the case is converted, the Trustee alternatively moved to have the case reconverted to a Chapter 7.

## A. **Conversion from Chapter 7 to Chapter 13**

A decision as to whether the Debtors have a statutory right to convert their Chapter 7 case into a Chapter 13 case is guided, in part, by *§ 706 of the Bankruptcy Code*. *HNI*[⬆] Debtors may convert a Chapter 7 case "to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under *Section 1112, 1208*, or *1307* of this title." *11 U.S.C. § 706(a)*. However, "[n]otwithstanding any other provision of *[Section 706]*, a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." *11 U.S.C. § 706(d)*.

The legislative history associated with *§ 706* states that it was designed to give "[t]he debtor one absolute right of conversion of a liquidation case to a reorganization or individual repayment plan case." H.R. Rep. No. 95-595, at 380 (1977); S. Rep. 95-989, at 94 (1978). Moreover, "[t]he policy of the provision is that the debtor should [**10] always be given the opportunity to repay his debts." Id. The question of whether a qualified debtor has an unqualified right under *§ 706* to convert "at any time" a case from Chapter 7 into Chapter 13 has been addressed in varying degrees by a number of courts. See *In re Salem, 465 F.3d 767, 775-76 (7th Cir. 2006)* (collecting cases).

One line of cases point to the "plain language" of *§ 706(a)* to support the position that a debtor possesses an absolute right to convert a Chapter 7 case into a Chapter 13 case. Some of those opinions hold that such a right may be exercised even after discharge has been entered.

---

1 Analysis and conclusions of law issued in this matter are based on Title 11 of the United States Code in effect prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 because this Bankruptcy case was filed prior to the effective date of that Act.

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 16 of 24

Page 7 of 15

359 B.R. 901, *907; 2007 Bankr. LEXIS 67, **10

See e.g., _Pequeno v. Schmidt (In re Pequeno), 126 Fed. Appx. 158 (5th Cir. 2005)_ (unpublished); _Mason v. Young (In re Young), 237 F.3d 1168 (10th Cir. 2001)_; _In re Oblinger, 288 B.R. 781 (Bankr. N.D. Ohio 2003)_; _In re Mosby, 244 B.R. 79 (Bankr. E.D. Va. 2000)_; _In re Porras, 188 B.R. 375 (Bankr. W.D. Tex. 1995)_. These opinions find no need for a good faith showing to justify conversion since the right to convert to Chapter 13 is named as absolute. See generally, _Young, 237 F.3d at 1173-74._ [**11]

Other courts have recognized an absolute right to convert but permit its denial when "extreme circumstances" exist. See e.g., _Martin v. Martin (In re Martin), 880 F.2d 857 (5th Cir. 1989)_; _Finney v. Smith (In re Finney), 992 F.2d 43, 45 (4th Cir. 1993)_; _Miller v. Miller (In re Miller), 303 B.R. 471 (B.A.P. 10th Cir. 2003)_; _In re_ [*908] _Spencer, 137 B.R. 506 (Bankr. N.D. Okla. 1992)_; _In re Carter, 285 B.R. 61 (Bankr. N.D. Ga. 2002)_; _In re Krishnaya, 263 B.R. 63 (Bankr. S.D.N.Y. 2001)_.

A separate group of cases impose a "good faith" requirement on the debtor before a Chapter 7 can be converted. See e.g., _Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474 (1st Cir. 2005)_, cert. granted _126 S. Ct. 2859, 165 L. Ed. 2d 894 (June 12, 2006)_; _In re Pakuris, 262 B.R. 330 (Bankr. E.D. Pa. 2001)_; _In re Thornton, 203 B.R. 648 (Bankr. S.D. Ohio 1996)_. See also _Cooper v. Cooper (In re Cooper), 426 F.3d 810 (6th Cir. 2005)_ (Court held that there is no absolute right to convert and conversion can be denied in the absence of good faith).

[**12] Entry of the Chapter 7 discharge prior to Debtors' efforts to convert raises a sharper issue. Many bankruptcy judges have held that a Chapter 7 discharge precludes a debtor from exercising any § 706 right to convert. See e.g., _In re Markovich, 207 B.R. 909 (B.A.P. 9th Cir. 1997)_; _In re Carrow, 315 B.R. 8 (Bankr. N.D.N.Y. 2004)_; _In re Gallagher, 283 B.R. 604 (Bankr. M.D. Fla. 2002)_; _In re Caruso, 272 B.R. 254 (Bankr. D. Neb. 2001)_; _In re Marcakis, 254 B.R. 77 (Bankr. E.D.N.Y. 2000)_; _In re Lesniak, 208 B.R. 902 (Bankr. N.D. Ill. 1997)_; _In re Hauswirth, 242 B.R. 95 (Bankr. N.D. Ga. 1999)_; _In re Jeffrey, 176 B.R. 4 (Bankr. D. Mass. 1994)_; _In re Wyciskalla, 156 B.R. 579 (Bankr. S.D. Ill. 1993)_; _In re Kilker, 155 B.R. 201 (Bankr. W.D. Ark. 1993)_; _In re Tardiff, 145 B.R. 357 (Bankr. D. Me._

_1992)_; _In re Safley, 132 B.R. 397 (Bankr. E.D. Ark. 1991)_; _In re Jones, 111 B.R. 674 (Bankr. E.D. Tenn. 1990)_.

The issue as to whether the right of conversion to Chapter 13 is absolute [**13] or limited is before the Supreme Court during its current term when it rules on the appeal in _Marrama v. Citizens Bank (In re Marrama), 430 F.3d 474 (1st Cir. 2005)_, cert. granted _126 S. Ct. 2859, 165 L. Ed. 2d 894 (June 12, 2006)_ (No. 05-996). Oral argument on the issue was conducted on November 6, 2006. However, the issue of effect of entry of the discharge order prior to an attempted conversion is not understood to be presented in that case. Therefore, even if determination is made in _Marrama_ that Debtors possess an absolute right to convert their Chapter 7 case into a Chapter 13 case, that will not likely resolve the question of whether the Debtors in this case can subject their now discharged Chapter 7 debts to a Chapter 13 plan of reorganization. Therefore, it does not appear appropriate to await the _Marrama_ decision.

While the Seventh Circuit has not specifically addressed the issue of whether a debtor may maintain a Chapter 13 case that concerns debts discharged in a previous Chapter 7 case, it did address the question of "whether [a debtor is] entitled to maintain a Chapter 13 proceeding while a Chapter 7 proceeding involving the same debts [is] [**14] pending." _In re Sidebottom, 430 F.3d 893, 896 (7th Cir. 2005)_. The Court termed the situation a "simultaneous Chapter 20" and distinguished it from a serial or sequential "Chapter 20" (i.e., the filing of a Chapter 13 upon the conclusion of a Chapter 7) or the type of situation presented to the Tenth Circuit Court in _Young_ where the case was "fully converted from a Chapter 7 proceeding to a Chapter 13 proceeding." _430 F.3d at 898_. In _Sidebottom_, the debtor filed a Chapter 13 petition after receiving a discharge in a Chapter 7 case, but prior to closing of that case. The new case listed debts that had been included in the Chapter 7. See _id. at 895-96_. Included was a debt that was the basis of a non-dischargeability adversary proceeding still pending in the Chapter 7 case at the time the Chapter 13 was filed. [*909] The resulting Circuit opinion relied, in part, on the Supreme Court's decision in _Freshman v. Atkins, 269 U.S. 121, 46 S. Ct. 41, 70 L. Ed. 193 (1925)_, which stated a general rule prohibiting existence of two suits at the same time for the same cause. _Sidebottom_ held that a debt that is expressly excluded from a

359 B.R. 901, *909; 2007 Bankr. LEXIS 67, **14

general discharge under [**15] Chapter 7 may not be simultaneously litigated in a separate Chapter 13 case. See _id. at 898-99_ (citing the rule advocated in _In re Turner, 207 B. R. 373 (B.A.P. 2d Cir. 1997)_, that simultaneous proceedings over a debt that was excluded from Chapter 7 discharge are not allowed).

Converting a Chapter 7 case into a Chapter 13 does not necessarily result in "simultaneous" cases based on the same debts. However, the present situation raises issues more akin to a serial or sequential Chapter 20 that was addressed by the Supreme Court in _Johnson v. Home State Bank, 501 U.S. 78, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991)_. The key difference between both situations is that the act of conversion does not create an additional case requiring separate administration due to the existence of a newly created bankruptcy estate. No new estate is created when a case is converted from one chapter to another prior to discharge. Instead, the conversion simply results in the Chapter 7 trustee being supplanted by a Chapter 13 trustee and the debtor incurring new responsibilities. Absent the filing of a "separate" bankruptcy case, prior to the discharge, the possibility that a debt could be "simultaneously" [**16] litigated in the bankruptcy forum is not presented.

But once the discharge has been entered prior to conversion, it is questionable whether the same discharged debts can be discharged twice -- once in the Chapter 7 case and then again in the Chapter 13 case. That possibility would appear to be barred by principles of res judicata. See generally _Highway J Citizens Group v. U.S. Dept. of Transp., 456 F.3d 734, 741 (7th Cir. 2006)_ ("[T]he doctrine of res judicata provides that, when a final judgment has been entered on the merits of a case, it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."). The legal analysis in Sidebottom indicates that discharged debts cannot be repaid through a Chapter 13 simultaneous or even converted case. The Bankruptcy Code points to the same conclusion.

HN2[⏺] Section 109(e) of the Code states, in part, that "[o]nly an individual with regular income that owes, on the date of the petition, [**17] noncontingent,

liquidated, unsecured debts . . . may be a debtor under chapter 13." (emphasis supplied). The term "debt" is defined in the Code as a "liability on a claim." See _11 U.S.C. § 101(12)_. A "claim" is defined, in part, as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." _11 U.S.C.A. § 101(5)_. See also _Johnson, 501 U.S. at 83_ ("[P]lain meaning of a 'right to payment' is nothing more nor less than an enforceable obligation. . . .")

The purpose of a Chapter 13 case is to provide a means by which a debtor can repay all or part of his debts owed to his creditors over an extended period of time. See _In re Aberegg, 961 F.2d 1307, 1309-10 (7th Cir. 1992)_; _In re Schaitz, 913 F.2d 452, 454 (7th Cir. 1990)_. The problem created here by the Debtors' Chapter 7 discharge is that they are no longer personally liable for the debts that they are [*910] now proposing to repay in a Chapter 13 plan. _11 U.S.C. § 524(a)(1)_. [**18] See also _Johnson v. Home State Bank, 501 U.S. 78, 84-85, 111 S. Ct. 2150, 115 L. Ed. 2d 66 (1991)_ (holding that in rem actions against a debtor are not discharged in a Chapter 7); _Cooper v. Walker (In re Walker), 151 B.R. 1006, 1008 (Bankr. E.D. Ark. 1993)_ ("Of course, while the discharge extinguishes personal liability of the debtor, the discharge does not in fact extinguish the debts themselves. Discharge of the debtor does not eradicate in rem liability which may exist against assets, nor liability of third persons …") (citations omitted).

A common argument voiced in opposition to allowing post-discharge conversions to Chapter 13 is that the debtor has been permitted to "cheat the system" by extinguishing personal liability on claims without having to turn-over non-exempt assets for liquidation and distribution to claimants against the estate. See David M. Guess, Exposing the Convert' Loophole: Postdischarge Conversion as An Abuse of the Bankruptcy Process, 2005 Ann. Surv. of Bankr. Law Part I § 19, (September 2006). The end result is said to be that the debtor is able to receive a windfall to the detriment of creditors that had their claims discharged in addition [**19] to the possibility of receiving a second discharge in the same case. See _In re Rigales, 290 B.R. 401, 407 (Bankr. D. N.M. 2003)_ ("When a debtor converts to Chapter 13 after the Chapter 7 discharge, but before the estate property is liquidated, he has received

359 B.R. 901, *910; 2007 Bankr. LEXIS 67, **19

all of the benefits of Chapter 7 without any of the burdens, because he regains his nonexempt property, and his debts have all been discharged."); and *In re Hauswirth, 242 B.R. 95, 97 (Bankr. N.D. Ga. 1999)* ("Nothing in the Bankruptcy Code or case law, however, provides a debtor the right to receive two discharges in a single case. The provisions of *§ 524* and *§ 727* are inconsistent with receiving both a Chapter 7 discharge and a Chapter 13 discharge in the same case. . . . To collapse the two proceedings into one, however, is inimical to the structure of the Bankruptcy Code.").

Because the effect of a discharge is to extinguish a debtor's personal liability with respect to any dischargeable debt, "only those debts not discharged and secured debts are surviving claims which may be included in [a Chapter 13 plan]." *Safley, 132 B.R. at 399-400*. *See also U.S. v. Frontone, 383 F.3d 656, 657-58 (7th Cir. 2004)* [**20] (noting that debtors can file a Chapter 13 after receiving a discharge of dischargeable unsecured debts in a Chapter 7 in order to repay remaining non-dischargeable unsecured debts along with secured debts). Absent a creditor [2] holding some "right to payment" from the Debtors, there is no "claim" that could be subject to a Chapter 13 reorganization plan. [3] Because [*911] the creditors that had their

claims discharged in the Chapter 7 no longer have any right to receive payment under a Chapter 13 plan or the right to objection to confirmation, the debtor "no longer has any meaningful debts to repay pursuant to a Chapter 13 plan." *Marcakis, 254 B.R. at 82*. *See also Rigales, 290 B.R. at 401* (holding that "all dischargeable debts are wiped out by the Chapter 7 discharge. Those creditors' claims are wiped out and, therefore, are not included in the Chapter 13 plan."). As stated by a bankruptcy judge in Lesniak:

> In order to have debts to repay [in a Chapter 13 case], debts must exist. If a discharge order is entered, and the automatic stay vacated as to secured creditors, a logical assumption is that debts no longer exist for the debtor to repay. [**21] (Footnote omitted). Thus, it is possible no claim would be filed in a converted Chapter 13.

*208 B.R. at 905.*

[**22] Therefore, it must be concluded that *HN4*[⬆] the Debtors' Chapter 7 discharge must be set aside if they wish to subject the debts listed in their Chapter 7 case to terms of a Chapter 13 plan. *See Safley, 132 B.R. at 399-400* ("If a debtor has been granted a discharge in a Chapter 7 and does not seek to set the discharge aside . . . it follows that only those debts not discharged and/or secured debts are the surviving claims which may be included in a payment plan pursuant to Chapter 13."). To find some right to maintain a Chapter 13 case to resolve or pay the same debts already discharged in Chapter 7, one must go through a strained re-creation of the Bankruptcy Code into a form of proceedings not actually provided for by statute.

**B. Vacation of Discharge**

Although the Debtors request that their Chapter 7 discharge be vacated, they do not specify a particular statute or rule of procedure to aid in a determination of whether such relief is proper. *HN5*[⬆] *Section 727(d)* of the Code permits a court to revoke a Chapter 7 discharge "[o]n request of the trustee, a creditor, or the United States Trustee . . ." if certain specified wrongs or omissions are shown. *11 U.S.C.A. § 727(d)* [**23] . That statute does not say that revocation may <u>only</u> be on request of those parties, but neither does that or any provision specify that a debtor may apply for vacation of the discharge order.

---

[2] *HN3*[⬆] A creditor is defined under the Code to mean:

(A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor;

(B) entity that has a claim against the estate of a kind specified in *section 348(d)*, *502(f)*, *502(g)*, *502(h)* or *502(i)* of this title; or

(C) entity that has a community claim.

*11 U.S.C.A. § 101(10).*

[3] At least one court holds the position that discharged debts may be paid in a Chapter 13 plan. In <u>Mosby</u>, the court stated in *dictum* that "there is no conceptual reason why a debtor could not propose to pay a discharged debt-even one discharged in a prior case-as long as such payment did not diminish the dividend that would otherwise be paid to creditors whose claims had not been discharged." *244 B.R. at 87 n. 13*. The court's conclusion was premised, in part, on a *Section 524(f)* of the Code ("Nothing contained in *subsection (c)* or *(d)* of this section prevents a debtor from voluntarily repaying any debt."). <u>See id.</u> It must be questioned, however, whether discharged debts may be repaid through a Chapter 13 plan when they would have fallen outside the Code's definition of the type of "debt" that would amount to a "claim" that could be paid by a Chapter 13 trustee.

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 19 of 24

Page 10 of 15

359 B.R. 901, *911; 2007 Bankr. LEXIS 67, **23

Because § 727(d) foregoing statutory language does not specify a debtor to be a party with standing to request vacation of the discharge order, some opinions have held that a debtor lacks standing under § 727(d) to move to have a discharge vacated. See _Markovich, 207 B.R. at 911_; _In re Aden, 237 B.R. 722, 725 (Bankr. N.D. Ill. 1999)_; _Wyciskalla, 156 B.R. at 580_. Moreover, it has been held that bankruptcy judges lack the equitable power necessary to vacate a discharge on their own volition. See generally _In re Morgan, 668 F.2d 261 (7th Cir. 1981)_ (court held under the former Bankruptcy Act that bankruptcy courts did not have inherent equitable authority to revoke a discharge). Accord _Markovich, 207 B.R. at 913_ (Bankruptcy Appellate Panel held that bankruptcy court did not have inherent equitable power to revoke a discharge outside the framework of § 727(d)). But see _Aden, 237 B.R. at 725_ [**24] (bankruptcy court concluded that it held "some equitable power" to vacate a [*912] discharge under _Rule 60(b) of the Federal Rules of Civil Procedure_).

### 1. _11 U.S.C. §§ 105(a) Does Not Grant Authority_

The weight of precedent holds that _HN6_[🔝] authority under _11 U.S.C. § 105(a)_ does not give authority for revocation of discharge on a debtor's motion.

Authority granted under § 105(a) of the Code that permits courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code may only be exercised "within the confines of the Bankruptcy Code." See _Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 198, 108 S. Ct. 963, 99 L. Ed. 2d 169 (1988)_. A bankruptcy court may not use "its equitable powers to circumvent the law." See _In re Greenig, 152 F.3d 631, 635 (7th Cir. 1998)_ (citing _Carlson v. United States, 126 F.3d 915, 920 (7th Cir. 1997))_. Nor does a bankruptcy court "have free-floating discretion,' to create rights outside the Code." _In re Lloyd, 37 F.3d 271, 275 (7th Cir. 1994)_. See also _In re Kmart, 359 F.3d 866, 871 (7th Cir. 2004)_ [**25] ("[T]he power conferred by § 105(a) is one to implement rather than to override."); _In re Fesco Plastics Corp., 996 F.2d 152, 154-55 (7th Cir. 1993)_ ("[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code.").

The Seventh Circuit Court of Appeals had an opportunity in _Disch v. Rasmussen, 417 F.3d 769 (7th Cir. 2005)_, to address whether a bankruptcy court's reliance on § 105(a) to vacate a Chapter 7 discharge order was a proper exercise of its equitable power.

In _Rasmussen_, the debtor received a general discharge in her Chapter 7 case while a creditor's adversary proceeding based on § 523(a) claims was pending. See _id. at 773_. During a hearing held in the adversary, the creditor argued for the first time that the debtor did not qualify under § 727 to receive a general discharge of her debts. See _id._ After permitting the creditor to amend his original pleading to include his § 727 claim, the bankruptcy court found that the debtor did not have a right to a general discharge. See _id. at 774_. The bankruptcy court, [**26] however, recognized that the debtor's conduct did not meet any of the grounds for revocation of the discharge that are set forth in § 727(d). Instead of revoking the discharge under § 727(d), the Bankruptcy Judge revoked the discharge based on purported equitable power under § 105(a). The court also held in the alternative that it had authority under _Rule 9024_ of the Bankruptcy Rules of Civil Procedure, to revoke the discharge order based on its conclusion that the discharge was issued due to the court's own mistake.

On appeal, the Seventh Circuit panel held that the bankruptcy court's reliance on § 105(a) to revoke the discharge order exceeded the court's equitable authority. The Court stated that the bankruptcy court's "broad interpretation of § 105(a) would make the list of grounds for revoking a discharge found in § 727(d) meaningless; anything not in the list could come in through the back door of § 105(a)." See _id. at 778_.

While the Seventh Circuit decision in _Rasmussen_ forecloses any court within this Circuit from relying on § 105(a) to vacate a discharge, the opinion pointed out its holding "does not mean that the court was without any authority [**27] to set matters rights." _Rasmussen, 417 F.3d at 778_. It cited _Rule 60(b) of Fed. R. Civ. P._ which as adopted by _Rule 9024 Fed. R. Bankr. P._ That Rule allows courts to vacate orders in accordance with the reasons specified [*913] therein. _Rasmussen_, noted that "[f]inal bankruptcy orders can be set aside under Bankruptcy _Rule 9024_ (citation omitted) and nothing in the rule indicates that it does not apply to the revocation of discharges." _See id._ (citing _In re Cisneros, 994 F.2d 1462, 1466 (9th Cir. 1993))_.

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 20 of 24

Page 11 of 15

359 B.R. 901, *913; 2007 Bankr. LEXIS 67, **27

In response to the creditor's argument that using _Rule 9024_ to vacate a discharge order "is essentially an end-run around the express terms of _§ 727(d)_," Rasmussen found no conflict between its operation and the terms of _§ 727(d)_. See _id. at 778_. The opinion reasoned, in part, that:

> This argument assumes, however, that the standards for relief under Bankruptcy _Rule 9024_ are identical to those under _§ 727(d)_, and this is incorrect. _Section 727(d)_ makes revocation mandatory if the criteria spelled out in that section are satisfied, while Bankruptcy _Rule 9024_ [**28] (like its civil counter-part _Rule 60(b)_) places a heavy burden on the party seeking to undo an existing judgment. In addition, Bankruptcy _Rule 9024_ incorporates the one-year time limit for motions under the analog to _Rule 60(b)(1)_, _(2)_, or _(3)_, while _§ 727(d)_ has no such built-in deadline . . . . It is reasonable to allow correction on any equitable ground within a short time period, and then to impose stricter restrictions thereafter. A closer look at _§ 727(d)_ shows that it creates a two-way street: it gives a _right_ to revocation to the trustee, creditor, or United States trustee when fraud is proven, and at the same time it protects the debtor by limiting the circumstances under which the trustee, creditor, or United States trustee has such a right. This limited right of the debtor is not infringed when a court exercises its discretion to reopen an order of discharge for one of the reasons recognized by Bankruptcy _Rule 9024_.

_Id. at 778-79_.

Based on the Seventh Circuit's decision in Rasmussen, it is within discretion here to vacate the order of discharge based on one of the reasons listed in _Rule 60(b) Fed. R. Civ. P._ [**29] should any be applicable. As Rasmussen, noted, _HN7_[⬆] the standards for relief under _§ 727(d)_ and _Rule 60(b)_ are not identical. Moreover, as stated in Rasmussen, _§ 727(d)_ "gives a right to revocation to the trustee, creditor, or United States trustee" whereas _Rule 60(b)_ only concerns a "party seeking to undo an existing judgment." Therefore a "party," such as a debtor in bankruptcy, may properly move to vacate a discharge order under _Rule 60(b)_ for one of the reasons recognized therein. See generally, _Houck v. Folding Carton Admin. Comm, 881 F.2d 494 (7th Cir. 1989)_ (holding generally that a "party" or "nonparty" under _Rule 60(b)_ is required

to show that his legal interests are affected); _National Acceptance Co. of Am., Inc. v. Frigidmeats, Inc., 627 F.2d 764, 766 (7th Cir. 1980)_ ("It is well-settled that [with an exception not relevant here] one who was not a party lacks standing to make (a 60(b)) motion.").

## 2. **Expressio Unius Est Exclusio Alterius Does Not Apply to Create an Inference that Congress Intended That Debtor's Lack standing to Move Under _§ 727(d)_**

As the Supreme Court made clear on more than one occasion with respect to [**30] statutory interpretation, _HN8_[⬆] "[w]here the statutory language is clear, our 'sole function . . . is to enforce it according to its terms'." _Rake v. Wade, 508 U.S. 464, 471, 113 S. Ct. 2187, 124 L. Ed. 2d 424 (1993)_. Courts are to interpret statutes according to their plain meaning "except in the 'rare cases [in which] the literal application [*914] of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" _United States v. Ron Pair Enter., Inc., 489 U.S. 235, 242, 109 S. Ct. 1026, 103 L. Ed. 2d 290 (1989)_ (citing _Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571, 102 S. Ct. 3245, 73 L. Ed. 2d 973 (1982))_. In such situations, the intention of the drafters, rather than the actual language used in the statute, controls the statute's interpretation. See _id._ When warranted, courts apply the statutory construction cannon of _expressio unius est exclusio alterius_, which means that the expression or inclusion of one thing implies the exclusion of all others. See _Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73, 80 (2002), 122 S. Ct. 2045, 153 L. Ed. 2d 82_; _In re Globe Building Materials, Inc., 463 F.3d 631, 635 (7th Cir. 2006)_. But see _Herman & MacLean v. Huddleston, 459 U.S. 375, 387 n.23, 103 S. Ct. 683, 74 L. Ed. 2d 548 (1983)_ [**31] (noting that this canon is "subordinated to the doctrine that courts will construe the details of an act in conformity with its dominating general purpose."). Moreover, this maxim is only a guide and does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an "associated group or series," justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence. _Barnhart v. Peabody Coal Co., 537 U.S. 149, 168, 123 S. Ct. 748, 154 L. Ed. 2d 653 (2003)_ (citing _United States v. Vonn, 535 U.S. 55, 65, 122 S. Ct. 1043, 152 L. Ed. 2d 90 (2002))_. See also _S.E.C. v. C. M. Joiner Leasing Corp., 320 U.S. 344, 351 n.8, 64 S. Ct. 120, 88 L. Ed. 88 (1943)_ (noting that

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document      Page 21 of 24

Page 12 of 15

359 B.R. 901, *914; 2007 Bankr. LEXIS 67, **31

expressio unius est exclusio alterius is "but an aid to construction."). As the Supreme Court explained in Echazabal:

> Just as statutory language suggesting exclusiveness is missing, so is that essential extrastatutory ingredient of an expression-exclusion demonstration, the series of terms from which an omission bespeaks a negative implication. The canon depends on identifying a series of two or more terms or things that should be understood to go hand in hand, which is abridged [**32] in circumstances supporting a sensible inference that the term left out must have been meant to be excluded. E. Crawford, Construction of Statutes 337 (1940) (*expressio unius* " 'properly applies only when in the natural association of ideas in the mind of the reader that which is expressed is so set over by way of strong contrast to that which is omitted that the contrast enforces the affirmative inference' " (quoting *State ex rel. Curtis v. De Corps, 134 Ohio St. 295, 299, 16 N.E.2d 459, 462 (1938)));* *United States v. Vonn, supra.*

*536 U.S. at 81.*

*HN9*[↑] Nothing about the language used in § 727(d) reveals any ambiguity or suggestion that Congress intended to either include or exclude debtors amongst individuals afforded standing under that provision. *Section 727(d)* states that "the trustee, a creditor, or the United States trustee" may request revocation of a discharge order. See generally *Rasmussen, 417 F.3d at 779* (noting that § 727(d) "gives a right to revocation to the trustee, creditor, or United States trustee."). No inference, either direct or implied, can be made in the noonday that a "debtor" was to be [**33] included in or excluded from this grouping.

The predecessor to § 727(d), Section 15 of the Bankruptcy Act of 1898 (*11 U.S.C. § 33*), provided that "[t]he court may revoke a discharge upon the application of a creditor, the trustee, the United States attorney, or any other party in interest . . . ." The sparse legislative history associated with § 727(d) fails to indicate why "party in interest" was deleted from the statute. The omission by Congress must be considered intentional, see generally [*915] H.R. Rep. No. 95-595 (1977); S. Rep. No. 95-989 (1978), but no legislative history has been found reflecting a legislative intent to

bar a debtor from moving to vacate a discharge. As earlier noted, Congress did not provide in § 727(d) that "only" the listed parties may seek to do so.

Moreover, one cannot reasonably argue that a debtor falls within the "associated group or series" listed in the statute in order to apply the Expressio Unius doctrine. The interests of a Chapter 7 debtor are not identical or even remotely similar to those of a trustee, creditors or the United States trustee. One of the primary purposes of the Code is to provide the honest but [**34] unfortunate debtor with relief from his or her debts. See *Grogan v. Garner, 498 U.S. 279, 286-87, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991); Rasmussen, 417 F.3d at 772.* A debtor seeks relief under Chapter 7 for the purpose of receiving a discharge from his or her financial obligations in order to embark on a "fresh start." See generally *Grogan, 498 U.S. at 286-87; Village of San Jose v. McWilliams, 284 F.3d 785, 790 (7th Cir. 2002).* An eligible debtor can pursue a discharge and a "fresh start" under a Chapter 13 bankruptcy by payments on claims and even keep a home by paying current mortgage and arrears due over time. See *In re Aberegg, 961 F.2d 1307, 1309-10 (7th Cir. 1992); 11 U.S.C. § 1301* et al. In contrast, the interests of a trustee, creditors and the United States trustee lie in ensuring that the debtor truly is honest and maximizing distribution of the debtor's assets to claimants, not in ensuring that the debtor actually receives a discharge. See *McWilliams, 284 F.3d at 790.* The general purpose of § 727(d) is to give the trustee, creditors, and the United States trustee a remedy [**35] against the dishonest debtor who should not be entitled to a financial "fresh start" due to some reprehensible behavior.

More to the point, Chapter 7 debtors are given a clear right to seek conversion to Chapter 13 "at any time" under § 706(a), and can try to save their homes or other property thereby. The Code should be viewed as encouraging and permitting debtors to pay their debts in Chapter 13 and thereby save property needed for their lives and families and should not be read to bar that possibility unless the statute clearly bars it.

In short, the different nature of interests of parties named in § 727(d) and the interests of debtors require conclusion that *HN10*[↑] the statutory listing does not under rules of construction bar debtors from seeking to vacate their discharge.

Case 16-09485    Doc 57    Filed 06/30/17    Entered 06/30/17 15:49:13    Desc Main
Document    Page 22 of 24

Page 13 of 15

359 B.R. 901, *915; 2007 Bankr. LEXIS 67, **35

### 3. *Rule 60(b) Fed. R. Civ. P.* **Provides Authority for Debtors' Motion**

While authorities have doubted the equitable power of a Bankruptcy Judge to revoke the Debtors' discharge on court's own volition, it has been held that *HN11*[⬆] *Rule 60(b) Fed. R. Civ. P.* (as adopted by *Rule 9024 Fed. R. Bankr. P.*) may permit courts to grant a debtor's [**36] request to vacate a discharge under certain circumstances. *See e.g., Cisneros v. United States (In re Cisneros), 994 F.2d 1462, 1466 (9th Cir. 1993)* (holding within the context of Chapter 13 case that the bankruptcy court was not foreclosed from relying on *Rule 60(b)* to vacate a Chapter 13 discharge); *Mosby, 244 B.R. at 90; Aden, 237 B.R. at 725; In re Tardiff, 137 B.R. 83, 85-89 (Bankr. D. Me. 1992); In re Jones, 111 B.R. 674, 680 (Bankr. E.D. Tenn. 1990); In re Tuan Tan Dinh, 90 B.R. 743, 745 (Bankr. E.D. Pa. 1988); In re Long, 22 B.R. 152, 154 (Bankr. D. Me. 1982)*. While some precedent holds otherwise, *United States v. Trembath (In re Trembath), 205 B.R. 909, 914 (Bankr. N.D. Ill. 1997)* (court stated "that *Rule 60(b)* should not be generally [*916] applied to vacate discharge orders . . . ."); *In re Fischer, 72 B.R. 111, 114 (Bankr. D. Minn. 1987)* ("A discharge in bankruptcy is not analogous to an entry of judgment, subject to vacation under *Fed. R. Civ. P. 60(b)*."). The Seventh Circuit opinion in [**37] *Rasmussen* in the year 2005 certainly recognized the possibility of a Chapter 7 debtor using *Rule 60(b)* to obtain relief from a discharge order.

*HN12*[⬆] Under *Rule 60(b)*, a party may seek relief from a final judgment, order or proceeding based on:
(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

*Fed. R. Civ. Pro. 60(b)*. This court's research has not uncovered any published decision that relied on or even discussed "newly discovered evidence" as the basis for revoking a discharge. *See e.g., Mosby, 244 B.R. at 90* (the court [**38] omitted "newly discovered evidence" from its application of *Rule 60(b)* to the debtor's request to vacate the discharge.) Yet Debtors' Chapter 7 discharge in this case may be vacated on that basis.

*HN13*[⬆] *Rule 60(b)(2)* is designed to allow modification of a prior ruling when evidence comes to light after a ruling that could not have been learned earlier. *See Bell v. Eastman Kodak Co., 214 F.3d 798, 801 (7th Cir. 2000)*. Relief based on "newly discovered evidence" is extraordinary in nature and will only be granted in exceptional circumstances. *Provident Sav. Bank v. Popovich, 71 F.3d 696, 698 (7th Cir. 1995)*. As the Seventh Circuit Court stated in Publicis Comme'n v. True N. Comme'ns, Inc., "A party needs awfully good stuff to win a *Rule 60(b)(2)* motion." *206 F.3d 725, 730 (7th Cir. 2000)*. In this circuit, a movant must prove that:

(1) the evidence was discovered following trial;

(2) due diligence on the part of the movant to discover the new evidence is shown or may be inferred;

(3) the evidence is not merely cumulative or impeaching;

(4) the evidence is material; and

(5) the evidence is such that a new trial would probably produce [**39] a new result.

*See Jones v. Lincoln Elec. Co., 188 F.3d 709, 732 (7th Cir. 1999)*. A motion premised on *Rule 60(b)(2)* must fail if any one of these prerequisites is not satisfied. *See In re Wildman, 859 F.2d 553, 558 (7th Cir. 1988)*.

In the present case, the newly discovered evidence is the appraisal that the Trustee obtained post-petition. Shortly before seeking relief under Chapter 7, the Debtors received an appraisal that valued their real estate at $ 104,000. This number is about half than the appraisal obtained by the Trustee. The Debtors had no way of knowing [*917] at the time they filed their Chapter 7 petition that the market value of their property would increase so drastically by the time the Trustee had their property appraised and this Court held a valuation

359 B.R. 901, *917; 2007 Bankr. LEXIS 67, **39

hearing. It was not until the Trustee obtained his appraisal that the Debtors discovered that their property was being appraised at a value drastically higher than the evidence they had in their possession at the time the Chapter 7 case was filed.

Although the Trustee argues that the Debtors may have purposely undervalued the market value of their home by more than $ 100,000, evidence [**40] on the record did not demonstrate any such malicious intent. No evidence has shown that the Debtors' former counsel purposely sought out a low market value from the appraiser in an attempt to pull the wool over the Trustee's eyes to the detriment of creditors. This is not a situation where the Debtors have been shown to have relied knowingly on a phoney pre-petition market valuation that was lower than other appraisals they knew were available. The difference in value between their appraisal and the Court's finding of increased value reflects more of market mobility and uncertainty, not deception. Had Debtors received a pre-bankruptcy market valuation that was double of that actually received by them prior to filing of their Chapter 7 case, they could have sought relief under Chapter 13 from the very beginning or, at the very least, they would have been able to make a well informed decision as to whether or not they wanted to have a Chapter 7 trustee sell their home. A third and more likely possibility is that had the Debtors known of the increased value they could have opted not to seek any form of bankruptcy relief. Based on the property's market value, there is a significant amount [**41] of equity that the Debtors might have been able to borrow against to satisfy their creditors and deal with their financial problems. In this context the Debtors' motion to vacate discharge and convert to Chapter 13 is seen as being made in good faith.

An alternative basis for allowing relief under _Rule 60(b)(5)_ is because it is no longer equitable that the discharge should have further viability. A series of unusual circumstances have caught debtors in a trap through no fault of their own. They should have a chance to save their house.

Therefore, the Debtors' Chapter 7 discharge will be vacated and they will be permitted to convert their Chapter 7 case to Chapter 13.

**C. Reconversion Denied**

The Trustee moved to have the Debtors' newly converted Chapter 13 case reconverted into a Chapter 7 case. He argues that reconversion is warranted because "cause" exists under _§ 1307_ of the Code. This argument is without merit.

_HN14_[↑] _Section 1307(c)_ of the Code provides that "the court may convert a case under this chapter to a case under chapter 7 of this title, . . . , for cause." _11 U.S.C. § 1307(c)._ The Trustee specifically argues that "cause" exists because [**42] the Debtors' Chapter 13 original petition was filed in bad faith.

Under Seventh Circuit authority, _HN15_[↑] several factors should be considered when deciding whether a Chapter 13 petition was filed in bad faith, including:

   a. the nondischargeability of the debt;
   b. the time of the filing of the petition;
   c. how the debt arose;
   d. the debtor's motive for filing the petition;
   e. how the debtor's actions affected creditors;
   f. the debtor's treatment of creditors both before and after the petition was filed;
   g. whether the debtor has been forthcoming with the bankruptcy court and the creditors.

_Sidebottom, 430 F.3d at 899_; _In re Love, 957 F.2d 1350, 1359 (7th Cir. 1992)_ (same).

Furthermore, in evaluating whether a petition was filed in good faith, the inquiry looks at both subjective and [*918] objective criteria. The good faith inquiry ". . . is both subjective and objective. That is, both objective evidence of a fundamentally unfair result and subjective evidence that a debtor filed a petition for a fundamentally unfair purpose that was not in line with the spirit of the Bankruptcy Code are relevant to the good faith inquiry." _Love, 957 F.2d at 1357._ [**43]

Some courts have employed a "good faith" standard when evaluating whether a conversion is proper. _See e.g., Pakuris, 262 B.R. at 335_ ("It follows that conversion to a chapter 13 case must likewise be sought in good faith since the bankruptcy court can reconvert the case to chapter 7 under _11 U.S.C. § 1307(c)_ for cause."). Other opinions suggest that a court can _sua sponte_ reconvert a case back to a Chapter 7 after recognizing an "absolute right" to convert where the petition was filed in bad faith. _See Finney, 992 F.2d at 45._

Case 16-09485   Doc 57   Filed 06/30/17   Entered 06/30/17 15:49:13   Desc Main
Document   Page 24 of 24

Page 15 of 15

359 B.R. 901, *918; 2007 Bankr. LEXIS 67, **43

However, converting the Debtors' case back into a Chapter 7 on Trustee's motion is not presently warranted.

First, it has not been suggested that any debts that could have been excepted from a Chapter 7 discharge will now be subject to the broad discharge to be granted in the Chapter 13 cases. Compare *11 U.S.C. §§ 523, 727* and *11 U.S.C. § 1328*. Secondly, any Chapter 13 plan proposed by the Debtors must provide unsecured claimants with an amount "no less than the amount that would be paid on such claim if the estate of the debtor [**44] were liquidated under chapter 7" in order to be confirmed. See *11 U.S.C. § 1325(a)(4)*. Based on the present record, the only non-exempt asset that the Trustee was seeking to use to pay unsecured claimants was that portion of the non-exempt equity in the Debtors' house. As of the petition date, the Debtors listed $ 49,160.63 in unsecured claims. Since it has been found that the property is worth $ 200,000, the Debtors have approximately $ 84,000 in unprotected equity once deductions are made for the unpaid mortgage and the Debtors' homestead exemptions. As such, the Debtors must pay claimants under a confirmable Chapter 13 plan 100% of unsecured claims filed, the same amount those creditors would have received if the Chapter 7 Trustee was permitted to sell the property. Creditors will, of course, have to wait longer for their money in a Chapter 13 case.

The Chapter 7 Trustee might have been prejudiced if there were lack of compensation for his work expended while employed as the trustee. However this prejudice was eliminated when the Debtors agreed that the Trustee's fee application will be allowed in full as a claim in their Chapter 13 case. [4]

---

[4] During the hearing held November 7, 2006, a question was raised from the bench as to whether a trustee is entitled to some form of compensation when a debtor converts a Chapter 7 case while the trustee trying to liquidate assets for distribution to creditors. *Section 326* of the Code is clear in stating that trustee's compensation award is premised on rendering services that ultimately result in the trustee disbursing money received into the estate to claimants. *11 U.S.C. § 326(a)*. When a case is converted under **Section 706**, the services of the chapter 7 trustee are terminated and the trustee essentially becomes another creditor. See *11 U.S.C. § 348(e)*; *Cable v. Ivy Tech State College, 200 F.3d 467, 474 (7th Cir. 1999)*. "To the extent unpaid compensable services have been rendered and expenses incurred in the Chapter 7 case, the Chapter 7 trustee or his counsel become claimants of the debtor's Chapter 13 estate." *In re Wells, 87*

[**45] Accordingly, "cause" is lacking to warrant the Debtors' case being reconverted [*919] to Chapter 7. The Trustee's motion to reconvert the Debtors case back to Chapter 7 will therefore be denied.

## CONCLUSION

In light of the foregoing, by separate order, the Chapter 7 discharge entered in this case has been vacated, the case has been converted to Chapter 13, and Trustee's motion to reconvert the Debtors' Chapter 13 case back into Chapter 7 has been denied.

ENTER:

Jack B. Schmetterer

United States Bankruptcy Judge

Entered this 11th day of January 2007.

---

End of Document

---

*B.R. 732, 736 (Bankr. N.D. Ga. 1988)*.

Although the Debtors and the Trustee entered into an agreement as to how much he is to be compensated, it is important to address this issue. In such a situation, the Chapter 7 trustee should be entitle to some level form of compensation beyond the minimum provided in *Section 330(b)* of the Code. See *In re Colburn, 231 B.R. 778, (Bankr. D. Or. 1999)* (court held that Chapter 7 trustee and his counsel was entitled to reasonable compensation and expense reimbursement beyond the statutory minimum in a converted case when the case was converted prior to the Trustee making any distribution). While it is not appropriate to state a bright line rule as to when such compensation is warranted, trustees in this circumstance might be invited to submit fee applications reflecting their efforts and seek reasonable compensation in accordance with *Section 330* of the Code.