IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | Case No. 16-09485 |
| George E. Ludkowski, | Chapter 7 |
| Debtor. | Hon. Timothy A. Barnes |

**DEBTOR GEORGE LUDKOWSKI'S AMENDED SUPPLEMENTAL
RESPONSE IN SUPPORT OF HIS MOTION TO CONVERT TO CHAPTER 13**

On August 2, 2017, this Court ruled that Debtor George Ludkowski ("Debtor") can proceed with his motion to convert his Chapter 7 bankruptcy to a Chapter 13 bankruptcy under section 706(a) of the Bankruptcy Code, even though an order of discharge has been entered because there is no evidence that Debtor acted in bad faith in filing his bankruptcy or his motion to convert. The Court further ruled, however, that before the Court would grant Debtor's motion to convert, Debtor must show that such conversion would not be futile, *i.e.*, that Debtor can offer some proposal to show that a confirmable plan is feasible.

**A.    Absent Indicia Of Bad Faith, Debtor Has A Right To Convert His Chapter 7 Bankruptcy To A Chapter 13.**

Under Section 706(a), Debtor has a right to convert his Chapter 7 case to Chapter 13. That section unambiguously states:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

*See* 11 U.S.C. §706(a).

In *Mirrama v. Citizens Bank,* the Supreme Court recognized that the right to convert a case from a Chapter 7 to a Chapter 13 under section 706(a) is subject to the debtor's "ability to qualify as a 'debtor' under Chapter 13." *Mirrama v. Citizens Bank,* 549 U.S. 365, 372 (2007)

(relying on section 706(d) which provides that a "case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter.") The Court explained that there are at least two possible reasons a debtor may not qualify as debtor, either (i) for cause, such as acting in bad faith in the course of a bankruptcy filing, or (ii) that the debtor cannot satisfy the debt limits imposed by section 109(e) of the Bankruptcy Code. *Id.* at 372-73, *citing* 11 U.S.C. §109(e). This Court determined at the hearing on August 2, 2017 that the Debtor has not acted in bad faith and Trustee's counsel has conceded that there is no dispute that Debtor can satisfy the filing limits imposed by Section 109(e).[1] Therefore, Debtor has a right to convert his Chapter 7 bankruptcy to a Chapter 13.

**B.    Debtor's Proposed Chapter 13 Plan.**

Debtor agrees with the Court's view that it would not be prudent for Debtor to pursue a futile remedy. But, so too would it be terribly wrong if Debtor were deprived of a right granted to him by the Bankruptcy Code; a right that could allow him to save his home.

This Court has asked Debtor as a condition of approving his motion to convert to provide some proposal to show that if the Court grants his motion to convert, Debtor could propose a confirmable plan in a Chapter 13 proceeding. The claims in Debtor's bankruptcy are relatively

---

[1] 11 U.S.C. §109(e) provides as follows:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

The current limits under Section 109(e) adjusted for inflation are $383,175 for unsecured debt and $1,149,525 for secured debt. *See Federal Register* Vol. 81, No. 34, Exhibit D.

2

minor with the single exception of the claim by Spokane Financial ("Spokane"). Debtor has prepared the plan ("Plan") which is attached hereto as Exhibit A to demonstrate to the Court that a confirmable plan is feasible.

As an initial matter, Debtor's wife, Lillian Ludkowski ("Lillian"), will agree to assume the obligation to pay all of the property taxes on the home held in joint ownership by her and Debtor. *See* Affidavit of L. Ludkowski ¶5, Exhibit B.[2] This will provide Debtor with an additional $417 per month to allow Debtor to make payments to the unsecured creditors in Debtor's proposed Plan. Lillian has also agreed to offer additional support, if needed to make a plan confirmable. *See* Affidavit of L. Ludkowski ¶6, Exhibit B.

This leaves Spokane's claim for Debtor to address. Debtor's Plan proposes two alternatives to address Spokane's claim. Under the first alternative, Debtor would file an adversary complaint to determine the validity of the purported lien of Spokane. For the reasons below, the Debtor anticipates that the lien will be void because it was obtained in violation of the Truth in Lending Act ("TILA"). Under the second alternative, Debtor would surrender his half-interest in his home to satisfy Spokane's claim.

> 1. **First Alternative: Debtor Will File An Adversary Claim To Void Spokane's Lien Because It Was Obtained In Violation Of The Truth In Lending Act.**

As an offer of proof, Debtor offers the following as the basis on which he would seek to challenge Spokane's note and mortgage based on protections afforded Debtor under TILA.

Spokane acquired the note and mortgage which are the basis of its claim from Premier Bank ("Premier Bank"). The note and mortgage are void under TILA because Debtor was never

---

[2] The version of the affidavit of Lillian Ludkowski attached to this supplemental response is unsigned. A signed version was mailed but not received in time to be attached to this supplemental response. Debtor will file a corrected brief upon receipt of the signed affidavit.

3

given a notice and three-day right of rescission for the loan as required by 15 U.S.C. §1635. The following facts explain why the loan is void under TILA.

In January 2006, Debtor accompanied John Lulias, Sr. ("Lulias"), Debtor's brother-in-law, to Premier Bank. Lulias and two of his business partners were trying to get a loan from Premier Bank to finance the purchase of Belmont Produce, Inc. ("Belmont Produce"), a convenience store located in Chicago, in a stock purchase transaction. <u>Debtor never had any interest whatsoever in Belmont Produce.</u> Although Debtor went with his brother-in-law to Premier Bank, Debtor was not there to apply for a loan and he had no understanding that he was applying for a loan.

Unbeknownst to Debtor, George Dernis ("Dernis"), the owner of Spokane, had induced Premier Bank to make the loan to Lulias and his partners. Dernis had a long standing relationship with Premier Bank; Dernis had borrowed in excess of $28 million from Premier Bank and he had an option to acquire an interest in Belmont Produce.

Approximately a week later, on January 13, 2006, Lulias asked Debtor to meet him at the office of Dernis' attorney. Upon arriving at Dernis' attorney's office, Debtor was ushered into a conference room where there was a large stack of pre-prepared, tabbed documents. The documents were given to Debtor to sign and he signed the documents without knowing what the documents were and without being told what the documents were. Debtor never looked at the documents he was signing, he was not given time to look at them, and he was never given copies of the documents.

The following facts surrounding the note and mortgage are also undisputed:

- Debtor never had any financial interest or any other interest of any kind in Belmont Produce.

4

- Debtor never had any involvement whatsoever in Belmont Produce; he never worked for Belmont Produce and he was never an officer or director of Belmont Produce.

- Premier Bank's loan officer, Angelica DeMetropolis ("DeMetropolis") knew <u>Lulias</u> was the one purchasing the business and that <u>Debtor was not</u> purchasing the business; DeMetropolis knew that Debtor had no interest whatsoever in Belmont Produce.

- DeMetropolis reviewed the Stock Purchase Agreement for Belmont Produce and the underwriter for the loan reviewed it prior to the closing on the loan; Debtor is not mentioned anywhere in the Stock Purchase Agreement.

- DeMetropolis understood that Debtor was <u>not</u> one of the owners of Belmont Produce, and she <u>never</u> believed that Debtor was an owner of Belmont Produce.

- Debtor did not receive any part of the loan proceeds nor did he receive any benefit at all from the loan by Premier Bank.

Among the documents that Debtor signed on January 13th at Dernis' attorney's office was a note and a mortgage for Debtor's personal residence at 8321 N. Ozanam, Niles, Illinois. However, when Debtor was presented with the note and mortgage during his deposition, Debtor testified that it appeared to be his signature on the documents but he could not testify that he had signed a "note" and "mortgage" because he had not been shown a complete copy of the documents he signed and he was never given copies of them. Lillian never signed the note or mortgage. <u>Debtor never received any notice of a right of rescission of the loan or mortgage as required by 15 U.S.C. §1635.</u> These facts were established in the depositions of DeMetropolis and by the deposition of Joey Waldman, who was George Dernis' and Spokane's attorney at the time of the transaction and who was present when the documents were signed.[3]

---

[3] Debtor can provide supporting deposition testimony and documents to substantiate the facts set forth herein. The deposition testimony would be admissible in a proceeding in this Court. Federal Rule of Civil Procedure 32, made applicable in an adversary proceeding under Federal Rule of Bankruptcy Procedure 7032, provides in part as follows:

> *Deposition Taken in an Earlier Action.* A deposition lawfully taken and, if required, filed in any federal- or state-court action may be used in a later action involving the same subject matter between the same parties, or their

5

Sometime thereafter, Belmont Produce, Lulias and his partners defaulted on the loan. Dernis then formed Spokane (which has been dissolved since 2012) for the sole purpose of acquiring the note and mortgage from Premier Bank. Spokane filed a mortgage foreclosure action against Debtor in the Circuit Court of Cook County, Chancery Division ("Chancery Court"). Debtor asserted a counterclaim for rescission under 15 U.S.C. §1635 and many other affirmative defenses including an affirmative defense also seeking rescission under 15 U.S.C. §1635. Debtor argued that under the decision in *Westbank v. Maurer*, 658 N.E.2d 1381, 1388-89 (Ill. App. 2nd Dist. 1995), the note and mortgage are void because Debtor was not given the three-day right of rescission required by TILA. A copy of the *Westbank* decision is attached as Exhibit C.

The *Westbank* court held that the three-day right of rescission applies even to commercial loans where, as here, the party to whom the loan is made does not have any prior relationship with the lender, where the borrower has no interest in the business for which the loan proceeds are used, and where the lenders' actions surrounding the loan are suspect. *Id*. at 1387. Under these circumstances, even a loan that is designated as a commercial loan will be treated as a consumer loan subject to the borrower's right of rescission under TILA. *Id*. at 1386-87. <u>In *Westbank*, the court held as a matter of law that a note and mortgage were void because the borrower was not afforded a notice and three-day right of rescission as required by TILA.</u> *Id*. at 1388-89.

---

    representatives or successors in interest, to the same extent as if taken in the later action. A deposition previously taken may also be used as allowed by the Federal Rules of Evidence.

Consequently, the deposition transcripts in the prior lawsuit with Spokane would be admissible here.

The Chancery Court never addressed the merits of Debtor's defense under TILA and *Westbank*. The Chancery Court entered a judgment of foreclosure against Debtor finding that Debtor could not raise his TILA defense because he failed to admit that he had signed the note and mortgage with Spokane and that in order to assert the TILA defense he first had to admit that he had signed the note and mortgage. The Chancery Court's decision was a clear misstatement of the law because Illinois law does not require a defendant to admit the elements of a plaintiff's cause of action in order to assert an affirmative defense. *See Betts v. Manville Personal Injury Settlement Trust,* 225 Ill. App. 3d 882, 904 (Ill. App. Ct. 4th Dist. 1992) ("in order to plead an affirmative defense, a defendant need not admit the elements of the plaintiff's cause action are true, but only allege that if plaintiff proves those elements, then plaintiff's right to relief is defeated by new matters….").

The Chancery Court's decision was never final and appealable. Although the Chancery Court entered a judgment of foreclosure, there was never a sale and confirmation. Under Illinois law, a mortgage foreclosure decision is not final and appealable until the trial court enters an order approving the sale of the property and directing the distribution of assets. *See JP Morgan Chase Bank v. Fankhauser*, 890 N.E.2d 592, 599 (Ill. App. 1st Dist. 2008). "A judgment of foreclosure is not final and appealable because it does not dispose of all of the issues between the parties and does not terminate the litigation." *Id.* This bankruptcy was filed before the sale of the property and, therefore, a final appealable decision was never entered in the Chancery Case. Debtor has never had the opportunity to obtain review of the Chancery Court's clearly erroneous decision. The time for appeal of the Chancery Court decision has not expired. Consequently, Debtor can raise his TILA challenge to Spokane's lien in an adversary proceeding.

**2.    Second Alternative: Debtor Will Surrender His Half-Interest In His Home.**

Alternatively, Debtor will surrender his one-half interest in his home at 8321 N. Ozanam, Niles, IL in complete satisfaction of Spokane's claim, and the Trustee will not pay any part of Spokane's claim.

**C.    Conclusion.**

In sum, the Plan attached as Exhibit A is a confirmable Plan. Accordingly, this Court should vacate Debtor's Chapter 7 discharge pursuant to Federal Rule of Civil Procedure 60(b) and Federal Rule of Bankruptcy Procedure 9024 and enter an order converting his Chapter 7 case to Chapter 13 pursuant to 11 U.S.C. §706(a) consistent with the Court's decision on August 2, 2017.

                                                Respectfully submitted,

                                                GEORGE LUDKOWSKI,

                                                By: /s/  Kevin P. McJessy
                                                       One of His Attorneys

Kevin P. McJessy
McJessy, Ching & Thompson, LLC
3759 N. Ravenswood, Suite 231
Chicago, Illinois 60613
(773) 880-1260
(773) 880-1265 (fax)
mcjessy@mcandt.com

8

**CERTIFICATE OF SERVICE**

I, Kevin P. McJessy, an attorney, certify that I caused the foregoing **Debtor George Ludkowski's Amended Supplemental Response In Support Of His Motion To Convert To Chapter 13** to be served upon:

| | |
|---|---|
| U.S. Trustee<br>Patrick S. Layng<br>Office of the United States Trustee<br>Region 11<br>219 S. Dearborn St., Room 873<br>Chicago, IL  60604<br>USTPRegion 11.es.ecf@usdoj.gov | N. Neville Reid<br>Fox Swibel Levin & Carroll, LLP<br>200 W. Madison Street<br>Suite 3000<br>Chicago, IL  60606<br>nreid@fslc.com |
| Robert N. Honig<br>116 S. York St., Ste. 215<br>Elmhurst, IL  60126<br>robert@roberthonig.com | Bruce de'Medici<br>Kelley Kronenberg<br>190 S. LaSalle St., Ste. 450<br>Chicago, IL  60603<br>bdemedici@gmail.com |

via the Court's ECF Filing System on this 20th day of September 2017 and upon

| | |
|---|---|
| Spokane Financial<br>c/o David E. Cohen<br>Fisher Cohen Waldman Shapiro<br>1247 Waukegan Rd., Ste. 100<br>Glenview, IL  60025 | Chase Card<br>PO Box 15298<br>Wilmington, DE  19850 |
| Harris & Harris Ltd.<br>111 W. Jackson Blvd., Ste. 400<br>Chicago, IL  60604 | Kohls<br>PO Box 2983<br>Milwaukee, WI  53201-2983 |
| PNC Bank<br>PO Box 3180<br>Pittsburgh, PA  15230 | SYNCB/Empire<br>PO Box 965036<br>Orlando, FL  32896-5036 |

via U.S. First Class Mail, postage prepaid, deposited in the United States Mail Depository located at 3759 N. Ravenswood, Chicago, Illinois, 60613 on this 20th day of September 2017.

/s/  Kevin P. McJessy
Kevin P. McJessy