UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 16bk09485 |
| | ) | |
| George E. Ludkowski, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge Timothy A. Barnes |
| | ) | |

TIMOTHY A. BARNES, Judge.

## MEMORANDUM DECISION

Before the court is Debtor's Motion for Rule to Show Cause [Dkt. No. 97] (the "Motion") brought by George E. Ludkowski (the "Debtor"), the debtor in the above-captioned bankruptcy case (the "Case"). In the Motion, the Debtor seeks damages for an alleged violation of the automatic stay by The Law Firm of Wendy R. Morgan ("Morgan").[1]

The determination of the Motion rests, in part, on the concurrent jurisdiction between the bankruptcy court and state courts regarding postpetition obligations of debtors (including, as applicable here, postpetition attorneys' fees in chapter 7 matters) and, in part, on the different scope of a debtor's bankruptcy estate in a chapter 7 case versus a chapter 13 case.

For the reasons set forth more fully below, upon review of the parties' respective filings and after conducting hearings on the matter, the court finds that a violation of the automatic stay occurred, and actual damages resulting therefrom must be recovered. No other or further damages are appropriate. As a result, the Motion will, therefore, be granted in part, denied in part and continued in part for a later hearing on additional actual damages consistent with this Memorandum Decision.

## JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

---

[1]      For the purposes of this Memorandum Decision and unless otherwise specifically noted herein, the court uses the term "Morgan" to refer to both The Law Firm of Wendy R. Morgan and the individual, Wendy R. Morgan.

A bankruptcy judge to whom a case has been referred may enter final judgment on any proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Motions to terminate, annul, or modify the automatic stay are core proceedings arising under title 11, in which the bankruptcy court is empowered to enter orders. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976-77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013). A request for sanctions for alleged violations of the automatic stay may only arise in a case under title 11 and, therefore, is a core proceeding. 11 U.S.C. § 363(k); 28 U.S.C. § 157(b)(2)(o); *Gecker v. Gierczyk (In re Glenn)*, 359 B.R. 200, 203 (Bankr. N.D. Ill. 2006) (Black, J.) ("[T]he cause of action for violating the automatic stay under section 362(k)(1) does not appear to have had a counterpart in eighteenth century England."). For the same reason, the court has constitutional authority to hear and determine this Motion. *The Klarchek Family Trust v. Costello (In re Klarchek)*, 508 B.R. 386, 389 (Bankr. N.D. Ill. 2014) (Barnes, J.). Nothing in *Stern v. Marshall*, 564 U.S. 464 (2011), or its progeny stands as or could reasonably be interpreted as an impediment to the bankruptcy court dispensing with routine motions arising out of the Bankruptcy Code.

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and constitutional authority.

## PROCEDURAL HISTORY

In addition to reviewing the Motion, the court has considered the arguments of the parties at the hearings on March 22, 2018, May 10, 2018 and June 14, 2018 (the "Hearings") and has reviewed and considered the following filed documents relating to the Motion:

(1)    Motion to Dismiss Debtor's Motion for Rule to Show Cause [Dkt. No. 98];

(2)    Motion to Dismiss Debtor's Motion for Rule to Show Cause [Dkt. No. 99] (the "Initial Reply");

(3)    Debtor's Supplemental Evidentiary Brief in Support of His Motion Pursuant to 11 U.S.C. § 362(k) [Dkt. No. 107] (the "Supplemental Brief");

(4)    Objection to Debtor's Motion for Damages under 11 U.S.C. § 362(k) [Dkt. No. 109]; and

(5)    Debtor's Reply in Support of His Motion Pursuant to 11 U.S.C. § 362(k) [Dkt. No. 114] (the "Reply").

The court has taken into consideration any and all exhibits submitted in conjunction with the foregoing. Though these items do not constitute an exhaustive list of the filings in the Case, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## BACKGROUND

The facts of this matter are essentially undisputed. On March 18, 2016 (the "Petition Date"), the Debtor commenced the Case. The Debtor was represented by Morgan in the filing of the Case, as well as a number of contested matters within the Case. On December 27, 2016, however, Morgan moved to withdraw from her representation of the Debtor, citing a breakdown of communication. *See* Motion to Withdraw as Attorney [Dkt. No. 42]. On January 10, 2017, that motion was granted.

On May 11, 2017, the Debtor, with the assistance of the counsel now representing him, moved to convert this Case from one under chapter 7 of the Bankruptcy Code to one under chapter 13 of the Bankruptcy Code. *See* Debtor George Ludkowski's Motion to Convert to Chapter 13 [Dkt. No. 47] (the "Motion to Convert"). The Motion to Convert drew an objection from the chapter 7 trustee and a creditor, and thus was not immediately resolved. The Motion to Convert was granted on November 15, 2017 (the "Conversion Date"). *See* Order to Convert to Chapter 13 [Dkt. No. 70].

On or about July 25, 2017, before the Motion to Convert was granted, Morgan filed a collection lawsuit against the Debtor in the Circuit Court of Cook County, Third Municipal Division (the "State Court") in Rolling Meadows, IL, Case No. 2017 M3 4535 (the "Collection Suit"), seeking $4,306.25 in allegedly unpaid legal fees. *See* Supplemental Brief, Exh. A-1-A. The Collection Suit is clearly limited to services provided to the Debtor after the Petition Date. It is based on a postpetition retainer agreement for representation of the Debtor with respect to a motion for turnover in the Case and adversary proceedings, and the dated invoices attached thereto are clearly for postpetition services. *Id.*

Nothing in the Collection Suit gives any indication that the Collection Suit was anything other than an action *in personam*. Other than that, what transpired in the Collection Suit is not entirely clear.[2] What is clear is that on February 23, 2018, the State Court entered an order requiring Morgan to either submit to it authorization from this court allowing the Collection Suit to proceed or face involuntary dismissal. *See* Supplemental Brief, Exh. B-2 (the "State Court Order"). In response, on or about March 27, 2018, Morgan filed a motion to reconsider the State Court Order. *See* Supplemental Brief, Exh. B-3 (the "Motion to Reconsider").

---

[2]     From the various documents submitted in connection with the filings relating hereto, *see* Supplemental Brief (and exhibits thereto), it appears that Morgan may have received a judgment by default, which judgment was either vacated or at the very least subject to a motion to vacate from the Debtor. Further, it appears that the Debtor sought to dismiss the Collection Suit, either concurrently with or after bringing the motion to vacate.

In between the entry of the State Court Order and the filing of the Motion to Reconsider, the Debtor brought the Motion here. The Motion is fully briefed and has been argued at the Hearings and is therefore ripe for determination.[3]

DISCUSSION

At issue in this matter are several questions that are independently straightforward. It is in their interaction in the Case at bar that causes concern. While brought under the guise of a motion for rule to show cause, the matter before the court is, at its essence, an action for stay violation damages under section 362(k).

Section 362(k) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

In order for damages to be compensable, first and foremost, there must be a violation of the stay. If there was, the court must determine whether the violation was willful and whether the Debtor is entitled damages therefrom. Finally, if there is a willful violation of the stay for which the Debtor is entitled to collect damages, the court must determine what damages are appropriate.

A.    Did a Stay Violation Occur?

The first question is quite simple: Is it a violation of the automatic stay for a chapter 7 debtor's attorney to sue that debtor in state court, during the pendency of the bankruptcy case, for unpaid postpetition fees?

In and of itself, the answer to that question is: No.

Section 362(a) of the Bankruptcy Code sets forth the automatic stay's prohibitions, as follows:

> [A] petition filed under section 301, 302, or 303 of this title … operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation … of a judicial … action or proceeding against the debtor *that was or could have been commenced before the*

---

[3]    Subsequent to the court taking this matter under advisement, the Debtor converted his case again, this time back to one under chapter 7. *See* Notice of Conversion of Case to Chapter 7 Under Section 1307(a) [Dkt. No. 123]. The determination of the Motion is not affected by this later conversion to chapter 7 as the Debtor's Motion is unaffected by conversion or dismissal of the Case. *Davis v. Courington (In re Davis)*, 177 B.R. 907, 911-12 (B.A.P. 9th Cir. 1995) ("Willful violation of the automatic stay is an intentional tort for which compensatory and punitive damages may be awarded. Imposition of damages for willful violation of the automatic stay serves an important purpose even after the underlying bankruptcy case has been dismissed; it provides compensation for and punishment of intentionally wrongful conduct. … Stated differently, intentionally wrongful conduct should not be excused merely because the underlying bankruptcy case has been dismissed. Thus, we conclude that 'a legally cognizable interest in the outcome of the [adversary proceeding] survives the bankruptcy.'") (internal citations omitted).

4

*commencement of the case under this title*, or to recover a claim against the debtor *that arose before the commencement of the case* under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment *obtained before the commencement of the case under this title*;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures *a claim that arose before the commencement of the case under this title*;

(6) any act to collect, assess, or recover *a claim against the debtor that arose before the commencement of the case under this title*;

(7) the setoff of any debt owing to the debtor *that arose before the commencement of the case under this title* against any claim against the debtor; and

(8) the commencement or continuation of a proceeding before the United States Tax Court concerning … the tax liability of a debtor who is an individual *for a taxable period ending before the date of the order for relief under this title*.

11 U.S.C. § 362(a)(1)-(8) (emphasis added). Sections 362(a)(1), (2) and (6) are clearly *in personam* protections afforded a debtor. The remainder are mostly *in rem* protections. *In re Whitlock-Young*, 571 B.R. 795, 805 (Bankr. N.D. Ill. 2017) (Barnes, J.).

As to the *in personam* protections, the emphasized language in section 362(a) makes clear that when the automatic stay protections are afforded to the debtor personally, the protections enjoin only those claims and actions that arose (or could have arisen) prior to the commencement of the bankruptcy case. *Compare* 11 U.S.C. §§ 362(a)(1), (2), (6)-(8) *with* 11 U.S.C. §§ 362(a)(3), (4).

The *in rem* provisions are further restricted. As to those, recall that

[t]he commencement of a bankruptcy case creates an estate comprised of "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a). The scope of this provision is "broad." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-5 (1983). As the Seventh Circuit Court of Appeals has noted, "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Carousel Int'l Corp.*, 89 F.3d 359, 362 (7th Cir. 1996) (internal quotation and citation omitted).

*In re West*, 507 B.R. 252, 257 (Bankr. N.D. Ill. 2014) (Barnes, J.); *see also Quade*, 482 B.R. at 225 ("The estate created under section 541 of the Bankruptcy Code is the foundation upon which a debtor's bankruptcy case is built."). That estate is generally measured, however, "as of the commencement of the case." 11 U.S.C. § 541(a). *But see* 11 U.S.C. § 541(a)(5). The "as of the commencement of the case" language excludes, among other things, a debtor's postpetition income and other assets acquired by debtor after the petition date. Prepetition assets become assets of the bankruptcy estate

5

while postpetition assets are assets of debtors. The *in rem* protections afforded a debtor's assets, like those afforded the debtor personally, are restricted to claims and actions that arose (or could have arisen) prior to the commencement of the bankruptcy case. *See* 11 U.S.C. §§ 362(a)(2), (5).

These limitations favor Morgan's position here: First, the *in personam* protections afforded the Debtor under the automatic stay do not prevent against actions based on postpetition obligations. Second, the *in rem* protections afforded to the assets of the Debtor also do not prevent against actions based on postpetition obligations. This means that, in attempting to collect from a debtor for unpaid fees for postpetition services, a chapter 7 debtor's counsel can look to a debtor personally, a debtor's postpetition income and assets, which are by definition otherwise not property of the debtor's estate under section 541.

The inevitable conclusion is this: *In personam* actions against a debtor and *in rem* actions against property of a debtor for purely postpetition obligations are not enjoined by the automatic stay. *Leonard v. Fitzhugh*, Case No. 14-CV-2294-WJM-KLM, 2015 WL 3826712, at *5 (D. Colo. June 19, 2015) ("[T]he Bankruptcy Code does not stay judicial proceedings that could not have been commenced prior to the bankruptcy petition, or proceedings to recover a claim against the debtor that did not arise before the commencement of the bankruptcy case."); *Fazio v. Growth Dev. Corp. (In re Growth Dev. Corp.)*, 168 B.R. 1009, 1014 (Bankr. N.D. Ga. 1994) ("Proceedings and claims that arise postpetition are not subject to the automatic stay. Rather, it is the enforcement of these claims that may be prohibited by the automatic stay.").

The reason for this is clear. One of the most fundamental principles of bankruptcy is that bankruptcy cases generally offer a fresh start. *Palomar v. First Am. Bank*, 722 F.3d 992, 995 (7th Cir. 2013). For individuals, this does not change simply because the individual's bankruptcy case is one under chapter 7 of the Bankruptcy Code. "A Chapter 7 bankruptcy is an exchange. The debtor surrenders his assets (subject to limited exemptions not at issue here) to his bankruptcy estate for equitable distribution to his creditors. In exchange he receives discharge from his debts and a fresh start." *Bank of Am., N.A. v. Veluchamy (In re Veluchamy)*, 879 F.3d 808, 815 (7th Cir. 2018) (*citing to Palomar*, 722 F.3d at 995).

An essential element of the fresh start is that it is measured at a fixed point in time—the debtor's petition date. *City of Chicago v. Marshall*, 281 F. Supp. 3d 702, 705 (N.D. Ill. 2017); *see also* 11 U.S.C. § 727(a). As a result, a debtor's postpetition obligations are not treated in the debtor's bankruptcy case, unless such obligations are equally obligations of the debtor's bankruptcy estate. *Id.*[4]

---

[4]    In addition, while district courts (and thus bankruptcy courts) have exclusive jurisdiction over the bankruptcy estate's property, no similar exclusive jurisdiction exists with respect to debtors and/or property of debtors. *See, e.g.*, 28 U.S.C. § 1334(e)(1); *see also, e.g.*, *Eden v. Robert A. Chapski, Ltd.*, 405 F.3d 582, 586 (7th Cir. 2005) ("state courts have concurrent jurisdiction with the bankruptcy courts to determine whether or not a debt is dischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a)"). This concurrent jurisdiction is directly relevant here. For example, state courts have concurrent jurisdiction with bankruptcy courts when a debtor alleges malpractice regarding postpetition representation. *Kogan v. Gersten (In re Gersten)*, Case No. CC–07–1353–DMkMo, 2008 WL 8444810, at *4 (B.A.P. 9th Cir. Feb. 29, 2008) ("The state court had concurrent jurisdiction over the Malpractice Litigation when it was based on postpetition representation of chapter 7 debtors, did not constitute property of the debtors' bankruptcy estate, and could not conceivably impact the administration of the debtors' bankruptcy estate.").

The next question that logically follows is this: Does this conclusion differ if the postpetition obligation is one for a debtor's attorney fees?

Once again, the answer is: No.

Chapter 7 debtor's attorneys are not retained or compensated in the same manner as, for example, such attorneys are in cases under chapter 11 or 13. In chapter 11 cases, debtors in possession are charged with the duties of the trustee. *See* 11 U.S.C. § 1107(a); *In re Gilliam*, 582 B.R. 459, 465 (Bankr. N.D. Ill. 2018) (Barnes, J.). In chapter 7 and chapter 13 cases, debtor's attorneys are therefore not retained by order of the court. *Gilliam*, 582 B.R. at 465-66; *see also* 11 U.S.C. §§ 327(a), 328. Chapter 7 is even further from chapter 13 in this regard, however, as chapter 13 attorneys are nonetheless expressly required to seek approval of their compensation. 11 U.S.C. § 330(a)(4)(B); *Gilliam*, 582 B.R. at 466.[5] As a result, the relationship between a chapter 7 debtor and her attorney is akin to that in nonbankruptcy matters.

Put another way, other than the disclosure requirements noted above (and the court's concomitant authority to police that disclosure and the relationship addressed therein), postpetition compensation of debtors' counsel in chapter 7 cases is no different than the other postpetition obligations of that chapter 7 debtor generally.

Because unpaid fees for prepetition services will be discharged in the chapter 7 case and the assets out of which to pay unpaid fees for postpetition are few, most chapter 7 attorneys require payment up front for basic services and do not, in advance, agree to represent the debtor for costly postpetition matters such as dischargeability fights. As in the case here, when postpetition services that are not prepaid are required, separate engagements are entered into postpetition. Those agreements are postpetition obligations of the debtors and may be enforced in the same way as other postpetition obligations, provided of course that no attempt to pursue assets protected by the automatic stay is made.

Each of the foregoing is based on the presumption that the counsel is not representing the bankruptcy estate but the debtor personally. It is further predicated on the presumption that the collection activity does not violate other aspects of the bankruptcy canon, for example interfering with the administration of the bankruptcy estate or seeking recovery from assets of the bankruptcy estate.

That gives rise to the last question, one which is implied in the Debtor's argument but never expressly stated: Does the conversion of the Case from one under chapter 7 to one under chapter 13 change the foregoing conclusions?

---

[5]     Regardless of the chapter, however, debtor's lawyers are required to make the disclosures under section 329 of the Bankruptcy Code, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and applicable local rules. *See* 11 U.S.C. § 329; Fed. R. Bankr. P. 2016; Bankr. N.D. Ill. R. 2016–1; *see also Gilliam*, 582 B.R. at 466 ("Bankruptcy Rule 2016 requires '[e]very attorney for a debtor, *whether or not the attorney applies for compensation*, shall file and transmit to the United States trustee within 14 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code.'") (emphasis added).

Here the answer is finally: Yes, but with some qualifications.

There are two central changes relevant to this inquiry that take place when a case under chapter 7 is converted to a case under chapter 13. First, the scope of the automatic stay is broadened as what constitutes property of the estate; thus the protections afforded to property of the estate are concomitantly greater after the conversion. Second, the conversion date is an effective date for many protections afforded the debtor. Thus the Debtor here may believe that the conversion date may play a role in defeating the foregoing analysis.

As to the first change, recall that earlier the court noted that the division between property of debtors and property of bankruptcy estates is normally made "as of the commencement of the case." 11 U.S.C. § 541(a). Such is the case in chapter 7. If, however, a debtor converts his case under chapter 7 to one under chapter 13, this calculus changes. In chapter 13 cases, section 1306 states as follows:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title—
>
> (1) all property of the kind specified in such section that the debtor acquires *after the commencement of the case* but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11 U.S.C. § 1306(a). Thus property of the estate in a chapter 13 case is no longer as constrained by the commencement of the case. Postpetition property, including income, is property of the estate. *Id.*; *see also Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) ("[T]he Bankruptcy Code says that all the earnings of a Chapter 13 debtor are property of the estate. 11 U.S.C. § 1306(a)(2)."). In a case converted from chapter 7 to chapter 13, it is the date of the commencement of the case, not the date of conversion, upon which this is measured. *See, e.g.*, 11 U.S.C. §§ 348(a), (b) (addressing when the conversion date is used instead of the date of the filing of the petition, the commencement of the case, or the order for relief, but not including section 1306).

What this means under the facts at bar is simple: The potential pool of assets from which a collection action for unpaid postpetition chapter 7 counsel fees can be paid is greatly diminished. An *in rem* action on postpetition obligations properly brought against a debtor's assets during the pendency of a chapter 7 case will be stayed by the conversion of the chapter 7 case to one under chapter 13 if the targeted assets become part of the broader bankruptcy estate in chapter 13. At the very least, the potential pool of assets for which a postpetition judgment can be satisfied is diminished by the conversion.

The Collection Suit is, however, an action *in personam*, not one *in rem*. *Leonard*, 2015 WL 3826712, at *5; *Wabash, St. L. & P. Ry. Co. v. Shacklet*, 105 Ill. 364, 380 (1883) (a right under a contract "is a right *in personam*, and consequently avails only against the person with whom" the contract is made); *U.S. Fid. & Guar. Co. v. Old Orchard Plaza Ltd. P'ship*, 776 N.E.2d 812, 823 (Ill.

App. Ct. 2002) (same). Merely bringing an *in personam* lawsuit does not offend the *in rem* protections of the automatic stay, even if the potential pool of assets for which a judgment can be satisfied is slight. True, once judgment has entered, the successful party might avail itself of *in rem* remedies such as a citation to discover assets, *see, e.g.,* 735 ILCS 5/2-1402 (2018), but that is not automatic. The automatic stay question will arise when and if it is pursued and will be informed by whether the assets pursued are protected by the stay. Until then or until some other offending act occurs, a debtor defending a postpetition *in personam* action does not bootstrap into the *in rem* protections of the automatic stay.

So while the assets that the Collection Suit might validly pursue after judgment are diminished by the conversion of the Case, it is not this change that causes the continuation of the Collection Suit to be in violation of the stay. It is the answer to the second question that does.

As to the second change, the conversion date affects provisions of the Bankruptcy Code that are otherwise measured from the date of commencement of the case. In that regard, section 348 addresses when the conversion date is used instead of the date of the filing of the petition, the commencement of the case, or the order for relief, as follows:

> (a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief.

> (b) Unless the court for cause orders otherwise, in sections 701(a), 727(a)(10), 727(b), 1102(a), 1110(a)(1), 1121(b), 1121(c), 1141(d)(4), 1201(a), 1221, 1228(a), 1301(a), and 1305(a) of this title, "the order for relief under this chapter" in a chapter to which a case has been converted under section 706, 1112, 1208, or 1307 of this title means the conversion of such case to such chapter.

> . . .

> (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112, 1208, or 1307 of this title, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

11 U.S.C. §§ 348(a), (b), (d). Section 348 does not, however, address directly sections 362, 541 or 1306—the automatic stay and the sections defining property of the estate for these purposes. One might therefore conclude that the conversion has no effect and that the inquiry is at an end. Given the application of section 348(d), however, such is not the case.

Section 348(d) does something particularly germane to the issue at bar therefore: It changes the postpetition nature of Morgan's claim to one that is prepetition. *See, e.g., Friedlander v. Doherty,* 851 F. Supp. 515, 519 (N.D.N.Y. 1994) ("[C]laims arising after the filing of a Chapter 11 petition and before conversion to Chapter 7 are treated 'for all purposes' as claims arising pre-petition, unless they qualify as 'administrative expenses' under section 503(b)."). Thus without addressing section 362(a), section 348(d) causes the *in personam* stay in favor of the Debtor to now prohibit the

9

continuation of the Collection Suit. *See, e.g., Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 395 (6th Cir. 2001) (a postpetition, preconversion claim must be brought first to the bankruptcy court, as it is either administrative and within the bankruptcy court's exclusive jurisdiction or, pursuant to section 348(d), must be "be treated as if it arose prior to commencement of the original bankruptcy proceeding, and ... therefore [is] within the reach of § 362(a)(1).").

Thus the continuation of the Collection Suit after the conversion of the case from one under chapter 7 to one under chapter 13 on its face violates the *in personam* stay under section 362(a) as it is the continuation of a judicial action or proceeding against the Debtor to collect on a claim that is deemed to have arisen before the commencement of the Case by section 348. *See* 11 U.S.C. §§ 362(a)(1), 348(d).

The not-so-short answer to the question of whether a stay violation occurred is finally this: Yes, the automatic stay was violated by the continuation of the Collection Suit after the conversion of the Debtor's case from one under chapter 7 to one under chapter 13.

B.    Was the Violation Willful and Is the Debtor Entitled to Damages?

The conclusion that the stay was violated requires the court to dig further into section 362(k). As noted above, section 362(k) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(k)(1).

Morgan unquestionably acted intentionally and with knowledge of the existence of the Case. The weight of the case law provides that Morgan therefore acted willfully. "A willful violation does not require specific intent to violate the stay; it is sufficient that the creditor takes questionable action despite the awareness of a pending bankruptcy proceeding." *In re Radcliffe*, 563 F.3d 627, 631 (7th Cir. 2009) (*citing to Price v. United States (In re Price)*, 42 F.3d 1068 (7th Cir. 1994)); *see also In re Swindle*, 584 B.R. 259, 264 (Bankr. N.D. Ill. 2018) (Cox, J.). While Morgan might not have initially had knowledge of the conversion and thus the change in application of the automatic stay, she cannot disclaim knowledge at the time she filed the Motion to Reconsider. Morgan filed the Motion to Reconsider on or about March 27, 2018. Morgan had, however, responded to Motion at bar here by that time. Morgan's Initial Reply was filed on March 21, 2018, thus conclusively demonstrating that Morgan had knowledge of the conversion referenced in detail in the Motion.

Further, the Debtor is an individual. *See* 11 U.S.C. § 101(42) (defining person as an individual, partnership or corporation).[6] Having concluded that the Debtor is an individual and that Morgan willfully violated the automatic stay, the award of actual damages for any injury is mandatory. 11 U.S.C. § 362(k) (a debtor "*shall recover* actual damages, including costs and attorneys' fees") (emphasis added); *In re Kuhn*, 322 B.R. 377, 392 (Bankr. N.D. Ind. 2005) (Bankruptcy Code provisions using shall "are mandatory directives, depriving the court of any discretion").

---

[6]    While the term "individual" is not defined in the Bankruptcy Code, it is generally accepted that in the context of section 362(k), individual means a "natural" person. *In re Prairie Trunk Ry.*, 125 B.R. 217, 220 (Bankr. N.D. Ill. 1991) (Squires, J.), *aff'd sub nom. Consol. Rail Corp. v. Gallatin State Bank*, 173 B.R. 146 (N.D. Ill. 1992).

10

C.     What Is the Measure of the Damages?

In the Motion and the Supplemental Brief, the Debtor has asked for a variety of damages. In the Motion, the Debtor asks for punitive damages consisting of $5,000.00, a refund of all fees paid to Morgan and all fees incurred by the Debtor in the Collection Suit. Actual damages are also requested by the Debtor but are not itemized.

In the Supplemental Brief, the Debtor sets forth the fees and costs incurred in the Collection Suit prior to the filing of the Motion to Reconsider, in the amount of $1,755.38. A review of the invoices attached to the Supplemental Brief makes clear that a portion of these fees and costs, namely $380.00 in fees and $2.38 in costs (together, the "Preconversion Damages"), were incurred prior to the Conversion Date when the Collection Suit was not stayed. Further, a portion of the fees and costs incurred after the Conversion Date were self-initiated and not in response to any action by Morgan, when Debtor sought to have the Collection Suit stayed or dismissed. These total $985.00 and $238.44 in costs (the "Postconversion Proactive Damages"). Last, the remainder of the fees and costs appear to have been incurred in light of opposition from Morgan to the Debtor's attempts to have the Conversion Suit stayed or dismissed, in the amount of $325.00 in fees and $65.38 in costs (the "Postconversion Reactive Damages").[7] The Debtor also makes clear that additional damages may arise in having to defend against the Motion to Reconsider.

The Bankruptcy Code does not define what constitutes actual damages for the purposes mandatory recovery under section 362(k)(1). Common sense tells us that for damages to be actual, they must both demonstrably exist and relate to the stay violation. *See Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 249 (N.D. Ill. 2000) ("Actual injury must be proved with reasonable certainty, and mere speculation, guess or conjecture will not suffice."), *aff'd*, 239 F.3d 876 (7th Cir. 2001); *Sucre v. MIC Leasing Corp. (In re Sucre)*, 226 B.R. 340, 350 (Bankr. S.D.N.Y. 1998) (adopting "proximate cause" as the measure of relation).

The Preconversion Damages set forth above fall into the context of punitive damages, not actual damages, as they arose before the Collection Suit was stayed and are not therefore proximately caused by the stay violation. As a result, they are not mandatory by the express terms of section 362(k). 11 U.S.C. § 362(k)(1) ("an individual … *may* recover punitive damages") (emphasis added). On the other hand, the Postconversion Reactive Damages all appear to result from Morgan's failure to either stay the Collection Suit on her own request or accede to the Collection Suit being stayed or dismissed at the request of the Debtor. The proximate cause for such damages appears to be Morgan's violation of the automatic stay extant in the converted Case. As a result, such damages are actual damages and mandatory under section 362(k). So too would be any additional costs incurred by the Debtor in defending against the Motion to Reconsider. All such damages could have been avoided had Morgan simply asked the State Court to stay the Collection Suit.[8]

---

[7]     The court has used the actual invoices attached to the Supplemental Brief, which, as can be seen, total more than the amount set forth by the Debtor in the Supplemental Brief. In reviewing the invoices, the court has determined that the efforts expended therein were reasonable in relation to the issues at bar, and the hourly rate charged ($250.00/hr.) easily falls within the local market rate for attorneys' fees.

[8]     In the court's opinion, Morgan's voluntary staying of the Collection Suit—allowing it to remain open but not proceeding with such suit—would not violate the automatic stay. Proceeding with the matter in a substantive way, in turn, violates the stay. *See, e.g., In re Hall-Walker*, 445 B.R. 873, 876-77 (Bankr. N.D. Ill.

The Postconversion Proactive Damages exist in a grey area. In other contexts, the Seventh Circuit has ruled that inaction can be an action when it comes to a violation of the automatic stay. *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699, 706-07 (7th Cir. 2009). In *Thompson*, the Seventh Circuit stated that a creditor in possession of estate assets acquired prepetition violates the automatic stay by not returning the assets after a bankruptcy case has been commenced. *Id. Thompson*, however, was decided in the context of an affirmative duty under the Bankruptcy Code to turn over such assets, *see* 11 U.S.C. § 542, and on-point Supreme Court cases that support that conclusion. *See, e.g., Whiting Pools, Inc.*, 462 U.S. at 211.[9] The court does not equate the failure to dismiss a pending suit with the inaction disfavored in *Thompson*, and the Seventh Circuit appears to agree. *Brown v. JP Morgan Chase Bank*, 334 F. App'x 758, 759 (7th Cir. 2009) ("We have not held that the automatic stay imposes on creditors an affirmative duty to dismiss pending lawsuits …."). Dismissal of a pending suit might prejudice the creditor. All that is necessary is that the matter be stayed.

Still, it appears that Morgan took no active steps to stay the Collection Suit and resisted the Debtor's attempts to do so. Some of the steps during this period seemed unrelated to the issue of the stay, namely the Debtor's attempts to vacate a default that had occurred when the Collection Suit had not been stayed. The remainder, however, appear to be proximately caused by Morgan's failure to affirmatively request that the State Court stay the Collection Suit. As a result and after careful review of the invoices in question, the court finds that $760.00 in fees and $2.80 in costs (the Postconversion Proactive Damages minus the initial hearing fees and appearance costs) are actual damages incurred by the Debtor.

Together then, the Debtor's actual damages are $1,085.00 ($760.00 of the Postconversion Proactive Damages plus the $325.00 Postconversion Reactive Damages) in fees and $65.18 ($2.80 of the Postconversion Proactive Damages plus the $65.38 Postconversion Reactive Damages) in costs, plus any amounts reasonably incurred in defending against the Motion to Reconsider after the date this matter was briefed.

---

2011) (Cox, J.). While *Hall-Walker* might be read to require the dismissal of the Collection Suit, such a reading ignores the severity of how the underlying matter was continued. *See id.* at 877 ("During a time when the Debtor should have been focused principally on her bankruptcy case in an effort to reorganize her debts, she was being summoned to Domestic Relations Court, accruing additional attorney's fees and facing threats of incarceration for her failure to refinance the mortgage."). Simple continuations for periodic status or placing the matter on so-called bankruptcy calendar would be equally acceptable.

[9]     A close reading of *Thompson* appears to indicate that while self-help by a creditor (holding an asset "until [the creditor] subjectively feels that adequate protection is in place, or until the debtor moves for the asset's return") is prohibited, there is nothing therein that states a creditor cannot affirmatively move for relief from the automatic stay and request that the court allow it to retain the asset until the matter is resolved. *Thompson*, 566 F.3d at 707-08 (stating a creditor may not hold the collateral until adequate protection is determined but making no clear reference to the pending adjudication to a stay relief request). *Contra Consumer Fin. Servs. Corp. v. Alexander*, Case No. 10 C 6725, 2011 WL 760167, at *3 (N.D. Ill. Feb. 24, 2011) (finding a violation of the stay where a creditor held the asset while seeking to annul the stay *and* exercised independent self-help by demanding from the debtor conditions on release of the collateral).

The remaining requests fall into the category of punitive damages as they are not proximately caused by the stay violation. As noted above, the award of punitive damages under section 362(k) is discretionary and reserved for appropriate circumstances. 11 U.S.C. § 362(k)(1). In that regard, the court "should consider factors such as: '(1) the nature of the creditor's conduct; (2) the creditor's ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor.'" *Consumer Fin. Servs.*, 2011 WL 760167, at *5 (*quoting In re Thompson*, 426 B.R. 759, 768 (Bankr. N.D. Ill. 2010) (Schmetterer, J.)). "It is, of course, beyond dispute that a punitive damage award is appropriate in certain cases to punish a wrongdoer for outrageous conduct and to deter others from engaging in similar conduct. An award of punitive damages, however, must be supported by the record and may not constitute a windfall to the prevailing party." *Hennessy v. Penril Datacomm Networks, Inc.*, 69 F.3d 1344, 1352 (7th Cir. 1995) (in the context of section 1981 damages); *Thompson*, 426 B.R. at 768 (adopting *Hennessy* in the context of automatic stay damages).

Here the court does not find Morgan's conduct to be outrageous. Yes, Morgan should have acted proactively to stay the Collection Suit once the case was converted and yes, Morgan should not have engaged substantively in the Collection Suit postconversion. The former, however, is excused in part by Morgan's confusion over the extent of the stay following the conversion. The latter, in turn, is excused in part by the State Court's insistence on dismissing the Collection Suit, rather than staying it. Prudence should have told Morgan to seek guidance from the bankruptcy court, but she did not. The resulting actions were imprudent, but not outrageous. The award of actual damages is more than enough to deter future conduct from Morgan. Anything else would be a windfall to the Debtor.

As a result, the court declines to award punitive damages in this matter.

## CONCLUSION

For all of the foregoing reasons, the court finds that a willful violation of the automatic stay exists and that the Debtor, an individual, is entitled to recover only his actual damages in the amount of $1,085.00 in fees and $65.38 in costs, plus any amounts reasonably incurred in defending against the Motion to Reconsider after the date this matter was briefed in an amount to be determined at a later hearing. As a result, the Motion will, by order entered concurrently herewith, be granted in part, denied in part and continued in part for a later hearing on additional actual damages consistent with this decision.

Dated: July 24, 2018

Timothy A. Barnes
United States Bankruptcy Judge